# IN THE
# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

UGO COLELLA
4200 Wisconsin Ave., N.W., #106-305
Washington, D.C. 20016,

-and-

JOHN J. ZEFUTIE, JR.
4 Jefferson Road
Cranbury, New Jersey 08512,

      *Plaintiffs*,

v.

THOMAS T. ANDROUS
2208 Russell Road
Alexandria, Virginia 22301,

-and-

2208 RUSSELL ROAD, LLC
2208 Russell Road
Alexandria, Virginia 22301,

-and-

2208 RR AVA, LLC
2208 Russell Road
Alexandria, Virginia 22301,

      *Defendants*.

Case No. 1:20-cv-813
**COMPLAINT**

Plaintiffs Ugo Colella ("Mr. Colella") and John J. Zefutie, Jr. ("Mr. Zefutie") (collectively, "Plaintiffs"), both attorneys who are proceeding on a *pro se* basis, for their complaint against Defendants Thomas T. Androus ("Mr. Androus"), 2208 Russell Road, LLC, and 2208 RR AVA, LLC (collectively, "Defendants"), allege as follows:

## PARTIES

1. Plaintiff Ugo Colella is a resident of the District of Columbia, with an address at 4200 Wisconsin Avenue, N.W., #106-305, Washington, D.C. 20016. Mr. Colella is a former partner of Culhane Meadows PLLC (the "Firm"). Mr. Colella is admitted to the Bar of the District of Columbia. Mr. Colella, admitted *pro hac vice* in the Commonwealth of Virginia, was lead trial counsel for the Defendants in a litigation in Alexandria Circuit Court captioned *Thomas Brothers Enterprises, LLC v. Thomas T. Androus et al.*, Case No. 18002683 (the "Alexandria Litigation").

2. Plaintiff John J. Zefutie, Jr. is a resident of New Jersey, living at 4 Jefferson Road, Cranbury, New Jersey 08152. Mr. Zefutie is admitted to the Bars of New Jersey and New York. Mr. Zefutie is a former partner of the Firm, and he also represented the Defendants in the Alexandria Litigation, after being admitted *pro hac vice* in the Commonwealth of Virginia.

3. Defendant Thomas T. Androus is a resident of the Commonwealth of Virginia, living at 2208 Russell Road, Alexandria, Virginia 22031.

4. Defendant 2208 Russell Road, LLC ("2208 Russell Road") is a limited liability company organized under the laws of the Commonwealth of Virginia, with an address of 2208 Russell Road, Alexandria, Virginia 22031. Mr. Androus is the sole and controlling member of 2208 Russell Road.

5. Defendant 2208 RR AVA, LLC ("2208 RR AVA") is a limited liability company organized under the laws of the Commonwealth of Virginia, with an address of 2208 Russell Road, Alexandria, Virginia 22031. Mr. Androus is the sole and controlling member of 2208 RR AVA.

6. Mr. Androus was adjudicated in the Alexandria Litigation to be an alter ego of 2208 Russell Road and 2208 RR AVA.

7. Defendants entered into a contractual arrangement with the Firm and Plaintiffs whereby Plaintiffs would represent the Defendants in the Alexandria Litigation and would be paid for that work on a monthly basis pursuant to an agreed-upon hourly rate (hereinafter, the "Contract for Legal Services" or "Contract").[1]  A true and correct copy of the Contract for Legal Services is attached hereto as **Exhibit 1**.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.

9. Venue is proper in this Court and this Court has personal jurisdiction over the Defendants because Plaintiffs have consented to venue and personal jurisdiction in this Court. The Contract for Legal Services provides that state or federal courts in the District of Columbia are the "exclusive forum for resolution of any litigation or disputes arising out of or related to" that agreement.

## FACTS COMMON TO ALL COUNTS

10. The Firm is not a traditional law firm when it comes to compensation. Unlike a traditional law firm that pays its partners annual agreed-upon draws, the Firm endorses a pure eat-what-you-kill model. Partners at the firm get paid only when a client pays the bill issued by the Firm. Thus, if a client does not pay a bill, then the partner does not get paid.

11. As Defendants were aware, the Firm pays partners according to a "100% objective," non-discretionary, fixed mathematical formula. Pursuant to that formula, a partner can

---

[1] Defendants signed two Contracts for Legal Services: the first in January 2019 and the second on July 15, 2019. The latter Contract governs this action.

be paid up to 80% of every dollar the partner bills and that a client pays the Firm (the "Partner Percentage").

12. The Firm retains an interest in only a small percentage of every paid-in dollar (the "Firm Percentage"). The Firm uses fees it obtains from the Firm Percentage to cover administrative and back-office expenses. The Firm is never entitled to more than the Firm Percentage of any fees paid by to the Firm by a client.

13. Based on this model, the Firm operates as a pass-through entity by which the Firm distributes client payments to partners according to the fixed, non-discretionary formula. Those payments are made to partners on a bi-monthly basis. The Firm has no interest in the Partner Percentage. The Firm imposes no billable hour requirements on any partner; does not maintain any productivity metrics; and expects that partners will pay all non-administrative expenses like marketing and litigation expenses.

14. The Firm does not set a partner's hourly billing rates or otherwise generally engage in any way with the relationship between a partner and a client. Partners in their sole and absolute discretion negotiate and define the terms of their representation. For example, partners are free to set whatever hourly rate makes sense for the client and can modify that rate during the course of a litigation if the needs of the case require it.

15. Further, partners in their sole and absolute discretion determine when an attorney-client relationship begins and when it ends. The Firm plays no role in that decision-making. Nor does the Firm play any role in a fee dispute between the client and the partner. Partners in their sole and absolute discretion determine the terms of any settlement arising out of a fee dispute.

16. Defendants retained Plaintiffs to represent them in the Alexandria Litigation. The Contract memorialized the parties' understanding. At the time Defendants entered into the

Contract, Defendants knew about the pass-through compensation system of the Firm. For example, Defendants knew that Plaintiffs had the sole and absolute discretion to set the hourly rates for the engagement and that that flexibility was a material factor in Defendants' decision to enter into the Contract in connection with the Alexandria Litigation.

17. At all relevant times, the Firm and Defendants understood and agreed that Plaintiffs were the intended beneficiaries of the Contract for Legal Services. Specifically, at all relevant times, the Firm and Defendants understood and agreed that Plaintiffs would receive 80 cents of every dollar that they billed and that was collected from the Defendants. Pursuant to that understanding, Defendants paid the Firm pursuant to the Contract.

18. The Firm and Defendants understood and agreed that the Firm only retained a 20% interest in monies that Defendants paid the Firm and that Plaintiffs had a guaranteed interest in 80% of those proceeds, which were divided up between them pursuant to a non-discretionary formula—a percentage to Mr. Colella as the originating partner and a percentage to Mr. Zefutie as a partner working on the Alexandria Litigation.

19. The Firm's and Defendants' course of performance confirmed this understanding and agreement. Upon Defendants making payments, the Firm distributed 80% of those funds to Plaintiffs according to the Firm's non-discretionary, mathematical formula. Defendants were fully aware of this fact. In further recognition that Plaintiffs were the intended beneficiaries of the Contract for Legal Services, when making payments, Mr. Androus, sometimes individually and sometimes through his bank Wells Fargo, alerted Mr. Colella (and not the Firm) by email or text message that a payment had been made.

20. At all times relevant herein, Mr. Androus only communicated with Plaintiffs when Defendants paid the Firm's invoices. At all relevant times herein, Plaintiffs (and not the Firm)

managed and made decisions regarding the payment-of-fees arrangement with Defendants. And, consistent with Plaintiffs' absolute discretion to set hourly billing rates and controlling the attorney-client relationship, Plaintiffs lowered their hourly rates and made other accommodations to Defendants over the course of the Alexandria Litigation, including, but not limited to, permitting Defendants to make partial payments of the monthly fees and expenses that Defendants were incurring in the Alexandria Litigation.

21. Beginning in March 2019 and ending in January 2020, Mr. Colella forwarded invoices to Defendants every month that detailed and documented the fees and expenses that Defendants were incurring in the Alexandria Litigation. Defendants never objected to any fees or expenses on any of those invoices.

22. Until June 2019, Defendants had been making partial payments of the invoices for Plaintiffs' work. At that time, the Alexandria Litigation became very contentious with significant motions practice. Thus, Defendants knew that litigation fees and expenses were going to continue to increase and that larger monthly payments would be required to keep their accounts receivable balance manageable so as to allow Plaintiffs to continue representing Defendants and to ensure that Plaintiffs would be compensated for all of the work that they were doing in the Alexandria Litigation. Payment of invoices was a material occurrence for Plaintiffs in light of the Firm's pure eat-what-you-kill, non-discretionary compensation system. Defendants were fully aware of these facts at all relevant times.

23. Thus, beginning in June 2019 and through late October 2019, Defendants repeatedly assured Plaintiffs that all invoices related to the Alexandria Litigation would be paid in full despite Defendants' partial monthly payments. Plaintiffs relied on these representations,

continued to represent the Defendants in the Alexandria litigation, and refrained from taking steps to withdraw from that litigation.

24. Trial in the Alexandria Litigation was set to begin on October 28, 2019—a date that was set at the case's inception, and a date that was not likely to move given the court's crowded docket and reputation for speed. Defendants continued to make partial payments through the end of October 2019. Concerned about the growing accounts receivable, which was due mainly to summary judgment and pre-trial motions practice from early September 2019 to late October 2019, Plaintiffs had numerous email and telephone communications with Defendants about Plaintiffs' concerns that Defendants may not pay the outstanding invoices.

25. During this time, Defendants fully understood that failure to pay the invoices for Plaintiffs' work would have serious negative financial consequences for Plaintiffs. Defendants knew that for every hour Plaintiffs worked on the Alexandria Litigation, Plaintiffs were prevented from working on other paying clients' cases. In other words, Defendants knew that, when Plaintiffs had to devote all of their time to the Alexandria Litigation due to summary judgment, pre-trial hearings, and trial, Plaintiffs had very limited sources of alternative income from their law practice.

26. To assuage Plaintiffs' concerns and to ensure that Plaintiffs would not seek to withdraw from the case, Defendants assured Plaintiffs that all payments of all overdue invoices would be made after the conclusion of the Alexandria Litigation, which was expected to end in the first week of November 2019. On October 17, 2019, Defendant Mr. Androus specifically communicated to Mr. Colella assurances of a payment plan, which would be in place on or before November 15, 2019. That representation, among many others, prevented Plaintiffs from withdrawing from the Alexandria Litigation because trial was set to begin in 11 days.

27. On November 4, 2019, the jury rendered a verdict against the Defendants. Plaintiffs thereafter asked Defendant Mr. Androus to fulfill his previous promises (including the one made on October 17) to agree to a plan to pay off all of the fees and expenses incurred through trial by November 15. Mr. Androus, however, acting on behalf of all Defendants, refused to do so.

28. Despite Mr. Androus's refusal, and to meet what they understood to be their ethical obligations to Defendants, Plaintiffs continued to represent Defendants in post-trial proceedings hoping that Mr. Androus would fulfill his October 17 promise to enter into a payment plan. Although Mr. Androus has never entered into a payment plan, he has repeatedly acknowledged that the Defendants are liable for all outstanding fees and expenses incurred in the Alexandria Litigation. As such, Defendants have breached the Contract for Legal Services.

29. Plaintiffs—and not the Firm—terminated the Contract on January 8, 2020.

30. As of that date, in connection with the Alexandria Litigation, Defendants owe the Firm and Plaintiffs $392,287 in attorney's fees, $39,441 in expenses, and $8,677 in late-payment interest for a total of $440,405 (hereinafter, the "Alexandria Litigation Debt"). Defendants have never disputed that they owe this money. In fact, in sworn discovery responses submitted in the Alexandria Litigation, Defendants sought these fees/expenses as damages and affirmed under penalty of perjury that the fees/expenses owed to the Firm in connection with the litigation were true and accurate.

31. With respect to the Alexandria Litigation expenses, vendors have repeatedly contacted Plaintiffs for payment and have threatened litigation unless Defendants' litigation expenses are paid by Plaintiffs out of their own personal funds. Defendants are fully aware of this fact but continue to refuse payment of those expenses.

32. Plaintiffs now are compelled to bring this action to recover the following: $320,771, the Partner Percentage applicable to the Alexandria Litigation, which represents the attorney's fees and late-payment interest due and owing to Plaintiffs (minus the Firm Percentage); all of the Alexandria Litigation expenses $39,441, which Plaintiffs are required to pay from their own personal funds due to Defendants' failure to pay; and, the reasonable attorney's fees and expenses incurred to prosecute this action, as allowed by the Contract for Legal Services.

## **CAUSES OF ACTION**

### COUNT ONE
### Breach of Contract
### (Against All Defendants)

33. Plaintiffs incorporate paragraphs 1-32 of the Complaint as if fully set forth herein.

34. The Contract for Legal Services is a valid, binding, and enforceable agreement between Defendants and the Firm.

35. Plaintiffs are intended third-party beneficiaries to the Contract because the Firm and Defendants agreed and understood that: (a) the Firm has an interest in only 20% of the attorney's fees paid by Defendants; (b) the Firm has no interest in the litigation expenses incurred by Defendants because Plaintiff are required to pay those expenses from their own personal funds if Defendants do not pay; (c) Plaintiffs are entitled to 80% of all fees paid to the Firm by Defendants to be distributed among the Plaintiffs as set forth in this Complaint; and (d) Plaintiffs are entitled to all litigation expenses incurred but not paid in connection with the Alexandria Litigation.

36. Plaintiffs performed all of their obligations under the Contract, and Defendants accepted that performance without objection or complaint.

37. Defendants have breached the Contract for Legal Services by failing to pay the Alexandria Litigation Debt in full, which has been due and owing for several months.

38. Pursuant to the terms of the Contract, Defendants have waived any challenge to the Alexandria Litigation Debt because they failed to object to any fee or expense presented to them in monthly invoices issued from March 2019 through January 2020.

39. Plaintiffs have been significantly damaged by Defendants' breach of the Contract for Legal Services because they have not been paid the Partner Percentage of the Alexandria Litigation Debt or litigation expenses that Plaintiffs must pay out of their own funds.

40. As a direct and proximate cause of Defendants' breach of contract, Plaintiffs have been damaged as follows: in the amount of $320,771, representing Plaintiffs' Partner Percentage of the Alexandria Litigation Debt, and in the amount of $39,441, which represents all litigation expenses that Plaintiffs must pay from their own funds due to Defendants' failure to pay. Plaintiffs are also entitled to attorney's fees and expenses incurred to prosecute this action (as allowed by the Contract for Legal Services).

## COUNT TWO
### Breach of the Duty of Good Faith and Fair Dealing
**(Against All Defendants)**

41. Plaintiffs incorporate paragraphs 1-40 of the Complaint as if fully set forth herein.

42. As contract parties, Defendants owed a duty of good faith and fair dealing to the Firm.

43. Because Plaintiffs are intended third-party beneficiaries of the Contract for Legal Services, Defendants owed Plaintiffs a duty of good faith and fair dealing in performing their payment obligations imposed by the Contract.

44. Defendants breached their duty of good faith and fair dealing by not paying the Alexandria Litigation Debt and by repeatedly misrepresenting to Plaintiffs from June 2019 to October 2019 that Defendants supposedly intended to pay that debt in full.

10

45.     Defendants' breach of the duty of good faith and fair dealing was in bad faith because it prevented Plaintiffs from withdrawing from the Alexandria Litigation and caused severe financial harm to Plaintiffs—harm that Defendants were fully aware of.

46.     As a direct and proximate result of Defendants' breach of the duty of good faith and fair dealing, Plaintiffs are entitled to compensatory damages in the amount of $320,771, representing Plaintiffs' Partner Percentage of the Alexandria Litigation Debt and in the amount of $39,441, which represents all litigation expenses that Plaintiffs must pay from their own funds due to Defendants' failure to pay.  Plaintiffs are also entitled to attorney's fees and expenses incurred to prosecute this action (as allowed by the Contract for Legal Services).

## COUNT THREE
### Promissory Estoppel
### (Against All Defendants)

47.     Plaintiffs incorporate paragraphs 1-46 of the Complaint as if fully set forth herein.

48.     On multiple occasions over several months, Defendants represented to Plaintiffs that the Alexandria Litigation Debt would be paid in full.

49.     As a result of these representations, Plaintiffs fully expected to receive their Partner Percentage of the Alexandria Litigation Debt, plus litigation expenses.

50.     Defendants knew that Plaintiffs were relying on Defendants' payment-in-full promises because of the Firm's unique compensation structure, which puts all of the risk of non-payment on Plaintiffs (*i.e.*, if Defendants do not pay, Plaintiffs do not get paid).

51.     At all times relevant herein, Defendants were fully aware of the Firm's unique compensation structure and the pass-through nature of the Firm's payment system (*i.e.*, that 80% of every dollar paid to the Firm is paid out to Plaintiffs).

52. Defendants' promises of full payment were material to Plaintiffs' continued rendering of legal services to Defendants in the Alexandria Litigation. Indeed, Defendants knew that, without the full-payment promises, Plaintiffs would withdraw from the litigation and leave Defendants unrepresented.

53. Plaintiffs justifiably relied on Defendants' promises of full payment because Defendants had a history of partial payment of invoices as of late October 2019. In addition, Defendants repeatedly assured Plaintiffs that, by November 15, 2019, a plan for full payment of the Alexandria Litigation Debt plus expenses would be in place.

54. Plaintiffs have been significantly damaged by Defendants' failure to pay the Alexandria Litigation Debt in full, causing Plaintiffs to lose $320,771 in compensation and exposing Plaintiffs to liability to third-party vendors who provided litigation support services to Defendants and who have not been paid as a result of Defendants' refusal to pay.

55. Injustice can be avoided only by enforcing Defendants' promises to pay the Alexandria Litigation Debt in full.

## COUNT FOUR
### Unjust Enrichment/Quantum Meruit
### (Against All Defendants)

56. Plaintiffs incorporate paragraphs 1-55 of the Complaint as if fully set forth herein.

57. From January 2019 through December 2019, Plaintiffs provided valuable legal services that Defendants accepted without hesitation or criticism. Mr. Androus in particular repeatedly complimented Plaintiffs' work and work ethic.

58. From January 2019 through December 2019, Plaintiffs and Defendants were in constant communication, and Defendants approved all fees and expenses incurred in the Alexandria Litigation.

59. Defendants have been unjustly enriched because they accepted and approved legal fees and expenses without now having to pay for them in full.

60. As a direct and proximate result of Defendants' actions, Plaintiffs are entitled to compensatory damages in the amount of $360,212, representing the value of Plaintiffs' services and all litigation expenses that Plaintiffs must pay from their own funds due to Defendants' failure to pay.

61. Defendants in sworn discovery responses in the Alexandria Litigation have confirmed, under penalty of perjury, that, at a minimum, the damages figures set forth herein represented the reasonable value of Plaintiffs' services rendered in that litigation.

## COUNT FIVE
## Fraud
## (Against All Defendants)

62. Plaintiffs incorporate paragraphs 1-61 of the Complaint as if fully set forth herein.

63. Defendants fraudulently misrepresented to Plaintiffs on several occasions from June 2019 through October 2019 that Defendants would pay the Alexandria Litigation Debt in full.

64. As a result of these representations, Plaintiffs fully expected to receive their Partner Percentage of the Alexandria Litigation Debt plus litigation expenses.

65. For example, Mr. Androus's October 17, 2019 promise to enter into a payment plan to pay off the Alexandria Litigation Debt in full was knowingly false when made. At that time, Mr. Androus made that representation—as he had done on several previous occasions—with the specific purpose of ensuring that Plaintiffs would not withdraw from the Alexandria Litigation and would continue to represent Defendants. In fact, at the time Mr. Androus assured Defendants of a payment plan, he had no intention of entering into such a plan.

66. Defendants knew that Plaintiffs were relying on Defendants' payment-in-full promises because of the Firm's compensation structure, which puts all of the risk of non-payment on Plaintiffs (*i.e.*, if Defendants do not pay, Plaintiffs do not get paid).

67. At all times relevant herein, Defendants were fully aware of the Firm's compensation structure and the pass-through nature of the Firm's payment system (*i.e.*, that 80% of every dollar paid to the Firm is paid out to Plaintiffs).

68. Defendants' promises of full payment were material to Plaintiffs' continued rendering of legal services to Defendants in the Alexandria Litigation. Indeed, Defendants knew that, without the full-payment promises, Plaintiffs would seek to withdraw from the Alexandria Litigation.

69. Plaintiffs justifiably relied on Defendants' promises of full payment because Defendants repeatedly gave Plaintiffs those assurances and made partial payments from March 2019 through October 2019.

70. Plaintiffs have been significantly damaged by Defendants' failure to pay the Alexandria Litigation Debt in full, causing Plaintiffs to lose $320,771 in compensation and exposing Plaintiffs to liability to third-party vendors who provided litigation support services to Defendants and who have not been paid as a result of Defendants' actions.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that they have judgment as follows:

1. Judgment against Defendants on Counts 1-5 of the Complaint in the amount of $360,212, plus pre- and post-judgment interest.

2. All reasonable attorney's fees and expenses incurred in this action to enforce the Contract for Legal Services.

3. Judgment against Defendants for all other and further relief, both at law and in equity, to which Plaintiffs may show themselves justly entitled.

Dated: March 25, 2020

Respectfully submitted,

*/s/ Ugo Colella*
Ugo Colella
Plaintiff *Pro Se*
4200 Wisconsin Avenue, N.W.
#106-305
Washington, D.C. 20016
P: 202.247.5005
E: uacolella@gmail.com


*/s/ John J. Zefutie, Jr.*
John J. Zefutie, Jr.
Plaintiff *Pro Se*
4 Jefferson Road
Cranbury, New Jersey 08152
P: 609.658.1718
E: jzefutie@gmail.com

Case 1:20-cv-00813-RC   Document 1   Filed 03/25/20   Page 15 of 15