## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| UGO COLELLA, *et al.*, | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 20-813 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 9, 10, 15 |
| | : | | |
| THOMAS T. ANDROUS*, et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

### <u>MEMORANDUM OPINION</u>

#### Denying Defendants' Motion to Dismiss;
#### Granting Plaintiffs' Motion to Supplement the Complaint

## I. INTRODUCTION

This case is a dispute over legal fees. Thomas Androus hired attorneys Ugo Colella and John Zefutie to represent him and two of his companies in litigation in Virginia. Androus fell behind on his payments and, after a jury returned a verdict against him, stopped making payments altogether. Colella and Zefutie sued to recover their promised fees and expenses, but Androus has moved to dismiss their complaint. He argues that Colella and Zefutie lack standing to sue him because he contracted with their law firm, not Colella and Zefutie themselves. The Court holds that, although Colella and Zefutie were not parties to the contract between Androus and their law firm, Colella (at least) was an intended third-party beneficiary of the contract and can therefore sue under it. Androus's motion to dismiss is denied.

## II.  BACKGROUND

Androus and two of his businesses—2208 Russell Road, LLC and 2208 RR AVA, LLC—were involved in litigation in Alexandria, Virginia.  *See* Compl. ¶¶ 1, 7, ECF No. 1.[1]  For legal representation in the matter, Androus retained Colella and Zefutie ("Plaintiffs").  *Id.* ¶¶ 16, 18.  At the time, Plaintiffs were partners with the law firm Culhane Meadows PLLC.  *Id.* ¶¶ 1–2.  Colella was the originating partner (meaning he was the one who secured Androus's business) and lead trial counsel.  *See id.* ¶¶ 1, 18.

Culhane Meadows uses a "pure eat-what-you-kill" compensation structure: a partner gets paid only when a client pays for work that the partner did.  *Id.* ¶ 10.  The firm bills a client for any work performed and then transmits a fixed 80% of any payment received to the partners who worked on the client's case.  *See id.* ¶¶ 11, 17–18.  The firm retains the remaining 20% of fees to cover administrative and overhead costs.  *Id.* ¶ 12.  This eat-what-you-kill scheme means that partners do not get paid unless they generate revenue for the firm.  *See id.* ¶ 10.  By the same token, however, partners do not need to bill a certain number of hours or satisfy any other productivity standards.  *See id.* ¶ 13.

Consistent with its laissez-faire approach to compensation, Culhane Meadows also takes a hands-off approach to attorney-client relationship management.  It gives partners "absolute discretion" to negotiate with clients the terms of a representation, including the applicable hourly fees.  *Id.* ¶ 14.  Partners can adjust a representation's terms at any time and are solely responsible for resolving disputes with clients.  *Id.* ¶¶ 14–15.  Partners also "determine when an attorney-client relationship begins and when it ends"—the firm "plays no role."  *Id.* ¶ 15.  According to

---

[1] The complaint alleges that Androus is "the sole and controlling member" of the two businesses, which it also names as defendants.  Compl. ¶¶ 4–6.  For simplicity, the Court refers to the defendants collectively as "Androus."

the complaint, Androus knew about Culhane Meadows's compensation and management structure when he retained Plaintiffs. *Id.* ¶¶ 16–18. Indeed, Plaintiffs say that a "material factor" in Androus's decision to hire them was the flexibility they enjoyed in adjusting a representation's terms as needed. *Id.* ¶ 16.

Androus first contracted with Culhane Meadows in January 2019, but this dispute arises out of a second legal services agreement signed in June 2019. Compl. ¶ 7 n.1; *see also* Compl., Ex. 1 ("Agreement"), ECF No. 1-1. The latter agreement is written from the firm's perspective. *See generally* Agreement. It sets out hourly fees and describes the "Scope of Engagement" as "represent[ing] the client in a construction dispute currently pending in Alexandria Circuit Court." *Id.* at 1. It lists Colella as the "Responsible Attorney[]" and tells Androus that he should direct any questions or concerns with regard to the agreement or the firm's legal services to Colella. *Id.* at 1–2. Aside from providing a firm P.O. box address to which Androus could send payments, the only contact information the agreement gives for the firm is Colella's. *See id.* at 1, 3. The agreement also includes an integration clause declaring that it is the "entire agreement" between the parties, *id.* at 5–6, as well as a provision forbidding the parties from assigning their rights under the contract, *id.* at 8. The conclusion of the agreement thanks Androus "for the confidence that [he] ha[s] placed in Culhane Meadows in general, and in me in particular." *Id.* at 7. Below the conclusion reads: "Respectfully, Culhane Meadows PLLC," and, below that, "Ugo Colella, Partner." *Id.* Androus signed for himself and his two businesses. *Id.*

From the beginning of the representation, Androus made only partial payments on his bills. Compl. ¶ 22. So as the litigation picked up steam and headed toward trial, Plaintiffs sought assurances from Androus that he would compensate them for their work. *Id.* ¶¶ 22, 24. Androus "repeatedly" promised he would pay what he owed in full. *Id.* ¶ 23. On the eve of trial,

he sent Colella a payment plan that would begin shortly after the trial concluded.  *Id.* ¶ 26.
Because of Androus's assurances, Plaintiffs continued to represent him despite concerns that he
would renege.  *Id.* ¶¶ 24, 26, 28.  Then, after a jury ruled against Androus, he refused to pay up.
*Id.* ¶ 27.  Plaintiffs represented Androus during posttrial proceedings, but they ultimately
terminated the representation in January 2020.  *Id.* ¶¶ 28–29.

　　　Seeking to recover fees and litigation expenses, Plaintiffs filed this lawsuit.  *Id.* ¶ 32.
They allege five claims under District of Columbia law: (1) breach of contract; (2) breach of the
duty of good faith and fair dealing; (3) promissory estoppel; (4) unjust enrichment or quantum
meruit; and (5) fraud.  *Id.* ¶¶ 33–70.[2]  Androus responded with a motion to dismiss.  *See* Defs.'
Mot. Dismiss Lack Standing ("Defs.' Mot."), ECF No. 10.  He argues that Plaintiffs lack
prudential standing to bring any of their claims because they were not parties to the legal services
agreement.  *See generally id.*; *see also* Pls.' Opp'n Defs.' Mot. Dismiss ("Pls.' Opp'n"), ECF
No. 12; Defs.' Reply Opp'n Mot. Dismiss ("Defs.' Reply"), ECF No. 14.

　　　After briefing on Androus's motion to dismiss was complete, Plaintiffs alerted the Court
to several factual developments that had occurred since they filed their complaint.[3]  First,

---

[2] The agreement stated that District of Columbia law would govern any dispute arising
out of it.  Agreement at 8.

[3] Federal Rule of Civil Procedure 15(d) allows a party—with reasonable notice and the
court's permission—to supplement a pleading to "set[] out any transaction, occurrence, or event
that happened after the date of the pleading."  Courts should freely grant Rule 15(d) motions
when "doing so will promote the economic and speedy disposition of the entire controversy
between the parties, will not cause undue delay or trial inconvenience, and will not prejudice the
rights of any of the other parties to the action."  *Hall v. CIA*, 437 F.3d 94, 101 (D.C. Cir. 2006)
(quoting 6A Charles Alan Wright et al., *Federal Practice and Procedure* § 1504, at 186–87 (2d
ed. 1990)).  The additional facts Plaintiffs allege "bear[] on the relationship between the parties,"
*United States v. Hicks*, 283 F.3d 380, 386 (D.C. Cir. 2002), and Androus does not explain how
allowing supplementation would cause delay or prejudice him, *see* Defs.' Opp'n Mot. Leave File
Suppl. Opp'n Defs.' Mot. Dismiss, ECF No. 16.  Accordingly, the Court will permit Plaintiffs to
supplement their complaint (even though the new facts are of limited usefulness in resolving the
instant motion to dismiss).

Plaintiffs allege that they spoke with a lawyer in the general counsel's office at Culhane Meadows. *See* Pls.' Proposed Suppl. Opp'n Defs.' Mot. Dismiss ("Pls.' Proposed Suppl. Opp'n"), Ex. A ¶ 7, ECF No. 15-2.  He told them that Androus had contacted the law firm about settling the case without input from Plaintiffs.  *Id.* ¶ 7.  The firm's lawyer also reaffirmed that "80% of the fees that Defendants owe is a guaranteed payment to Plaintiffs."  *Id.* ¶ 9.  Second, Plaintiffs say that one of the vendors they hired for help with the litigation sought payment from Culhane Meadows.  *Id.* ¶ 12.  The firm deducted the vendor's payment from Colella's salary, explaining that the obligation belonged to Colella personally.  *Id.*  Finally, Plaintiffs point out that Culhane Meadows has not initiated any legal action to recover its portion of the attorneys' fees that Androus refuses to pay.  *See* Pls.' Proposed Suppl. Opp'n at 4.[4]

With that background out of the way, the Court is ready to rule on Androus's motion to dismiss.

### III.  LEGAL STANDARD

Androus moves to dismiss Plaintiffs' complaint for want of prudential standing.  *See generally* Defs.' Mot.; Defs.' Reply.  "Prudential standing, like Article III standing, is a threshold, jurisdictional concept."  *Deutsche Bank Nat'l Tr. Co. v. FDIC*, 717 F.3d 189, 194 n.4 (D.C. Cir. 2013).  When a plaintiff lacks prudential standing, the court lacks subject-matter jurisdiction.  *See Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987) ("[T]he defect of

---

[4] Culhane Meadows has, however, sent Androus a letter demanding that he pay the firm all the fees and expenses associated with his case.  *See* Defs.' Opp'n Suppl. Opp'n Defs.' Mot. Dismiss, Ex. 1, ECF No. 16-1.  Recognizing that Androus cannot be liable to both the firm and Plaintiffs for that entire sum, Plaintiffs seek only the 80% due to them under the firm's fee-splitting arrangement.  *See* Compl. ¶ 32; Defs.' Opp'n at 4.  In any case, because neither party has raised an issue over the firm's and Plaintiffs' overlapping interests, the Court will not discuss them further for now.  *But see* Fed. R. Civ. P. 19(a)(1)(B)(ii) (requiring joinder of a party when litigating the case in the party's absence would "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations").

standing is a defect in subject matter jurisdiction."); *Kalorama Citizens Ass'n v. SunTrust Bank Co.*, No. 18-cv-528, 2020 WL 5653695, at \*10 (D.D.C. Sept. 23, 2020).  Accordingly, the Court assesses Androus's motion under Federal Rule of Civil Procedure 12(b)(1).

Because "[f]ederal courts are courts of limited jurisdiction," they presumptively lack jurisdiction to hear a given case until the party asserting jurisdiction establishes otherwise. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Khadr v. United States*, 529 F.3d 1112, 1115 (D.C. Cir. 2008).  A court reviewing a Rule 12(b)(1) motion "accepts the allegations of the complaint as true," *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015), and grants the plaintiff "all *reasonable* inferences that can be drawn in her favor," *Artis v. Greenspan*, 158 F.3d 1301, 1306 (D.C. Cir. 1998).  Although it "may in appropriate cases dispose of" such a motion "on the complaint standing alone[,] . . . where necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

## IV.  ANALYSIS

Androus's sole argument for dismissing Plaintiffs' complaint is that Plaintiffs cannot sue to enforce the legal services agreement because they were not parties to it.  *See* Defs.' Mot. at 6–9.  It is true that, "[g]enerally speaking, only a party to an agreement can seek to hold a counterparty accountable for a breach of the agreement's terms." *Wash. Tennis & Educ. Found., Inc. v. Clark Nexsen, Inc.*, 270 F. Supp. 3d 158, 164 (D.D.C. 2017).  The rule is an application of the third-party standing doctrine. *Deutsche Bank Nat'l Tr. Co.*, 717 F.3d at 194 & n.5.  It ensures that the parties involved in a lawsuit had an interest in the transaction giving rise to the suit. *Id.* at 194.

Notwithstanding that general rule, District of Columbia law permits a nonparty to sue for breach of a contract when the nonparty was an intended third-party beneficiary of the contract. *Fort Lincoln Civic Ass'n, Inc. v. Fort Lincoln New Town Corp.*, 944 A.2d 1055, 1064 (D.C. 2008). "Third-party beneficiary status requires that the contracting parties had an express or implied intention to benefit directly the party claiming such status." *Silberberg v. Becker*, 191 A.3d 324, 332 (D.C. 2018) (quoting *Fort Lincoln*, 944 A.2d at 1064). More specifically, the contracting parties must have "intended to create and did create enforceable contract rights in the third party." *FiberLight, LLC v. Nat'l R.R. Passenger Corp.*, 81 F. Supp. 3d 93, 109 (D.D.C. 2015) (quoting *Sealift Bulkers, Inc. v. Republic of Arm.*, 95-cv-1293, 1996 WL 901091, at *4 (D.D.C. Nov. 22, 1996)); *see also* Restatement (Second) Contracts § 302(1) (Am. L. Inst. 1981). The issue is one of mixed law and fact. *Silberberg*, 191 A.3d at 336.

To assess contracting parties' intent, a court looks to the contract's language and, if that does not resolve the question, extrinsic evidence. *FiberLight*, 81 F. Supp. 3d at 109; *see also Fort Lincoln*, 944 A.2d at 1065–67 (considering contemporaneous statements by the contracting parties). A third party does not need to be "named in the contract" to be an intended beneficiary "as long as he or she is ascertainable from the contract and the circumstances of the contract." *Silberberg*, 191 A.3d at 332 (quoting *Hossain v. JMU Props., LLC*, 147 A.3d 816, 820 (D.C. 2016)). Nevertheless, the contracting parties' "mere knowledge or awareness that a contract may benefit a third-party" will not do; they must "directly and unequivocally intend to benefit" the third party. *Bowhead Info. Tech. Servs., LLC. v. Catapult Tech. Ltd.*, 377 F. Supp. 2d 166, 171 (D.D.C. 2005) (quoting *Barnstead Broadcasting Corp. v. Offshore*, 886 F. Supp. 874, 879 (D.D.C. 1995)). Third parties who benefit only incidentally from a contract cannot bring a suit under the contract. *See Fort Lincoln*, 944 A.2d at 1064–65.

Viewing the alleged facts in the light most favorable to Plaintiffs, the Court finds that Androus and Culhane Meadows likely intended that Colella would directly benefit from the contract.[5]  The text of the legal services agreement makes Colella's "involvement plainly ascertainable."  *See Hossain*, 147 A.3d at 820.  It lists Colella as the "Responsible Attorney[]," provides only his contact information, and tells Androus to direct any questions to Colella.  *See* Agreement at 1, 2, 7.  The agreement also ends with Colella signing off on the firm's behalf.  *Id.* at 7; *see also Silberberg*, 191 A.3d at 334 (explaining that a nonparty's signature on a party's behalf supported third-party beneficiary status); *Hossain*, 147 A.3d at 820 (same); *Kelleher v. Dream Catcher, LLC*, 278 F. Supp. 3d 221, 225 (D.D.C. 2017) (same).  In fact, before concluding, the agreement expresses gratitude for Androus's confidence "in Culhane Meadows in general, and *in me in particular*."  Agreement at 7 (emphasis added).  Noticeably absent is a provision barring suit by nonparties.  *See Silberberg*, 191 A.3d at 336 (distinguishing cases with contracts containing such provisions); *see also Parker v. John Moriarty & Assocs. of Va., LLC*, 332 F. Supp. 3d 220, 239 (D.D.C. 2018).  Altogether, the agreement "contemplates [Colella's] role as an active participant in the work to be performed under the contract rather than as a total stranger to the contract who, by chance, enjoys an occasional benefit."  *See W. Union Tel. Co. v. Massman Constr. Co.*, 402 A.2d 1275, 1277 (D.C. 1979).  Colella's apparent involvement in negotiating the agreement and his expected role in carrying it out tend to suggest that the parties intended him to benefit from it.  *See Silberberg*, 191 A.3d at 334 (describing a nonparty's involvement in a contract as "a fact that supports his third-party beneficiary status").

---

[5] Only one plaintiff needs prudential standing to bring a claim.  *See Mountain States Legal Found. v. Glickman*, 92 F.3d 1228, 1232 (D.C. Cir. 1996).  So because the Court finds that Colella is a third-party beneficiary under the legal services agreement, it will not analyze Zefutie's prudential standing separately.

The surrounding circumstances provide added support for that conclusion.  According to the complaint, Culhane Meadows's compensation structure dictated that Colella and the firm split any fees he earned.  Compl. ¶¶ 11, 17–18.  Neither the firm nor Colella got paid unless the other did too.  The firm also gave Colella "absolute discretion" to negotiate the terms of his representations and manage relationships with his clients.  Compl. ¶¶ 14–16.  Colella, not the firm, decided when a representation began or ended.  *Id.* ¶ 15.  A necessary premise of this laissez-faire, eat-what-you-kill model is that the firm's partners benefit from the representations they work on.  Culhane Meadows wants its partners to benefit because their skin in the game encourages them to generate fees that translate into revenue for the firm.  It likewise trusts partners with the authority to initiate representations on its behalf because it expects to profit as they pursue their own self-interest.  Indeed, the firm probably would never have entered into the agreement with Androus if Colella—the "originating partner," *id.* ¶ 18, who presumably negotiated the agreement for the firm—did not gain from it personally.  *Cf. Silberberg*, 191 A.3d at 335 ("[I]t is difficult to imagine what purpose [a contracting corporation] had in entering into the Agreement other than to benefit . . . its shareholders . . . .").[6]

Androus, for his part, was "clearly aware" that Colella "stood to benefit" from the agreement.  *See Kelleher*, 278 F. Supp. 3d at 225.  Plaintiffs say he knew exactly how the fees he paid would become Colella's income.  *See* Compl. ¶¶ 16–18.  And even if Androus did not know

---

[6] Colella's fee-splitting arrangement with Culhane Meadows, by itself, might suggest that he is nothing more than an incidental beneficiary of the agreement.  *See In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 60 (3d Cir. 2018) (explaining that third parties were not intended beneficiaries when their benefit stemmed from separate agreements between themselves and the contracting party); *see also Inova Health Care Servs. for Inova Fairfax Hosp. v. Omni Shoreham Corp.*, No. 20-cv-784, 2020 WL 4201661, at *4 (D.D.C. July 22, 2020) (similar).  But together, the 80/20 fee-splitting arrangement, Colella's authority to initiate representations for the firm, and Colella's central role in the agreement's text indicate that the firm intended Colella to be more than someone who just happened to benefit from the agreement.

the details, it is common sense that a law firm partner who negotiates a contract to provide litigation services would receive some portion of the client's fees. *Cf. Hossain*, 147 A.3d at 820 (finding that a nonparty's sole ownership of a contracting party suggested that he was an intended third-party beneficiary); *Kelleher*, 278 F. Supp. 3d at 225 (same).

To be sure, there are some signs that Androus and Culhane Meadows may not have intended for Colella to be a third-party beneficiary. Androus points to the agreement's nonassignment and integration clauses as evidence that the contracting parties meant to give only themselves rights under the contract. *See* Defs.' Mot. at 10; *see also* Agreement at 5–6, 8. Courts have certainly found that such clauses may weaken a third party's claim to intended beneficiary status. *See, e.g., In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 62 (3d Cir. 2018); *Veleron Holding, B.V. v. Morgan Stanley*, 694 F. App'x 858, 862 (2d Cir. 2017). But nonassignment and integration clauses, on their own, do not necessarily mean that the contracting parties did not intend to benefit a third party. "After all, it is possible for parties to intend that a third party enjoy enforceable rights while at the same time intending to limit . . . assignments" and ensure that the written contract constitutes the entire agreement between them. *See Piccoli A/S v. Calvin Klein Jeanswear Co.*, 19 F. Supp. 2d 157, 164 (S.D.N.Y. 1998). Cases ascribing weight to nonassignment and integration clauses often emphasize the dearth of other evidence supporting an intent to confer third-party beneficiary status. *See, e.g., Veleron Holding*, 694 F. App'x at 862 ("In the absence of [textual and circumstantial] evidence, several provisions that do appear in the Agency Disposal Agreement operate to limit third-party beneficiary status."); *Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 125 (2d Cir. 2005) (noting that a nonassignment clause "suggest[ed] an intent to limit the obligation of the contract to the original parties" but declining to decide whether the clause "entirely preclude[d]" an intended

third-party beneficiary finding because other "contractual language" could not support such a finding). Here, where "multiple provisions" of the agreement and the circumstances surrounding its negotiation "indicate an intention to confer a benefit on" Colella, the nonassignment and integration clauses are not determinative. *See Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 430 (S.D.N.Y. 2010).

In sum, Plaintiffs have sufficiently pleaded that Collela was an intended third-party beneficiary. The question at the motion-to-dismiss stage is merely whether, "constru[ing] the complaint liberally," Culhane Meadows and Androus's intent to benefit Colella "is a permissible inference from the facts alleged." *Inova Health Care Servs., for Inova Fairfax Hosp. v. Omni Shoreham Corp.*, No. 20-cv-784, 2020 WL 4201661, at *5 (D.D.C. July 22, 2020) (quoting *Chien v. United States*, No. 17-cv-2334, 2019 WL 4602119, at *3 (D.D.C. Sept. 23, 2019)). Plaintiffs have cleared that bar. The agreement's text clearly contemplates a central role for Colella. And the surrounding circumstances suggest that the parties intended him to benefit from the part he would play. Given allegations tending to show that intent, dismissal is premature. *See Silberberg*, 191 A.3d at 335 ("[C]onflicting evidence requires the benefit of discovery and development of the factual record to aid in construing the contract[] and discerning the parties' intent." (quoting *Anwar*, 728 F. Supp. 2d at 430–31)); *see also Parker v. John Moriarty & Assocs.*, 224 F. Supp. 3d 1, 15 (D.D.C. 2016) ("[T]he Court concludes that it does not have a sufficient record to ascertain the intent of the parties, particularly at this phase when the Court is required [to] construe the complaint in the light most favorable to [the plaintiff].").

Having rejected Androus's only argument for dismissal, the Court denies his motion.

## V.  CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (ECF Nos. 9, 10) is **DENIED** and Plaintiffs' motion to supplement the complaint (ECF No. 15) is **GRANTED**.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: January 27, 2021                                    RUDOLPH CONTRERAS
                                                          United States District Judge