**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UGO COLELLA** *et al.* | ) | |
| | ) | |
| **Plaintiffs/Counter-Defendants,** | ) | |
| | ) | |
| **V.** | ) | **Case No.  1:20-cv-00813-RC** |
| | ) | |
| **THOMAS T. ANDROUS** *et al.* | ) | |
| | ) | |
| **Defendants/Counter-Plaintiffs.** | ) | |
| | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**PLAINTIFF/COUNTER-DEFENDANTS' MOTION TO DISMISS COUNTERCLAIM**

Plaintiffs/Counter-Defendants, Ugo Colella ("Mr. Colella") and John J. Zefutie, Jr. ("Mr. Zefutie") (collectively, "Counsel") by and through their counsel, move this Court pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the Counterclaim filed by Defendants/Counter-Plaintiffs Thomas T. Androus, 2208 Russell Road, LLC and 2208 RR AVA, LLC (collectively "Androus"), stating as follows:

## TABLE OF CONTENTS

Page

I.   INTRODUCTION ............................................................................................ 1

II.  FACTUAL ALLEGATIONS ......................................................................... 3

III. LEGAL STANDARD .................................................................................... 5

  A.   Fed. R. Civ. P. 12(b)(6).......................................................................... 5

  B.   Judicial Notice ....................................................................................... 6

IV. ARGUMENT .................................................................................................. 7

  A.   Androus Does Not Allege that Mr. Zefutie Provided Advice
       Concerning Punitive Damages, Property Transfers or the VCPA, or
       that He Employed an Aggressive Litigation Style at Trial. ................... 8

  B.   The Punitive Damages Instruction Did Not Reference a Cap. .............. 9

  C.   Virginia Law Afforded Androus Both a Good Defense and
       Counterclaim against Thomas.............................................................. 10

    1.   Mr. Colella Properly Advised Androus on his VCPA
         Claim/Defense........................................................................... 11

    2.   The Counterclaim Fails to Allege Damages Due To Mr.
         Colella's Advice on the VCPA................................................. 13

    3.   Advising Androus that He Had a "Strong Case" Based upon
         Thomas's Lack of a Construction License Is Protected by
         the Judgmental Immunity Rule. ............................................... 13

  D.   Androus's Claim Relating to His Transfers of the Property Must
       Be Dismissed. ...................................................................................... 14

    1.   In Pari Delicto ......................................................................... 15

    2.   The Statute of Limitations ....................................................... 18

    3.   Judicial Estoppel ...................................................................... 19

  E.   Androus's Dubious Claims about Expert and Fact Witnesses
       Should Be Dismissed ........................................................................... 20

    1.   The Counterclaim Based on Expert Witnesses Fails as a
         Matter of Law. ......................................................................... 20

i

2.      The Counterclaim Ignores Androus's Own Wrongful
Conduct. ............................................................................................... 21

F.      Androus's Claim about Settlement Negotiations is Impermissibly
Speculative. .................................................................................................... 23

G.      Litigation Style Is Not a Basis for a Legal Malpractice Claim. ............................ 25

V.      CONCLUSION .......................................................................................................... 26

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adams v. Manown*,
  328 Md. 463, 615 A.2d 611 (1992) ................................................................. 15, 16

*Applegate v. Dobrovir, Oakes & Gebhardt*,
  628 F. Supp. 378 (D.D.C. 1985) ........................................................................ 26

*Ashcroft v. Iqbal*,
  556 U.S. 662, 129 S. Ct. 1937 (2009) ............................................ 5, 14, 21, 23, 25

*Baker v. Henderson*,
  150 F. Supp. 2d 13 (D.D.C. 2001) ...................................................................... 6

*Bell Alt. Corp. v. Twombly*,
  550 U.S. 544, 127 S. Ct. 1955 (2007) ................................... 5, 6, 8, 10, 13, 25

*Biomet Inc. v. Finnegan Henderson LLP*,
  967 A.2d 662 (D.C. 2009) .............................................. 7, 13, 14, 26

*Bowers Family Enters. v. Davis Bros. Constr.*,
  55 Va. Cir. 11 (Richmond 2001) ........................................................................ 12

*Campbell v. Magana*,
  184 Cal. App. 2d 751 (Ca. 1960) ...................................................................... 24

*Cannon v. District of Columbia*,
  569 A.2d 595 (D.C.1990) ................................................................................... 7

*Cecala v. Newman*,
  532 F. Supp. 2d. 1118 (D.C. Ax. 2007) ............................................................. 26

*Cohen v. Mayflower Corp.*,
  196 Va. 1153 (Va. 1955) ................................................................................... 12

*Colella v. Androus*,
  -- F. Supp. 3d -- (D.D.C. 2021) (Contreras, J.),
  2021 WL 289373 .................................... 1, 2, 4, 9, 11, 13, 14, 15, 16, 17, 18, 19, 20, 22, 23, 25

*Comcast Corp. v. FCC*,
  600 F.3d 642 (D.C.Cir. 2010) ............................................................................ 19

*E.E.O.C. v. St. Francis Xavier Parochial School*,
  117 F.3d 621 (D.C. Cir. 1997) ............................................................................ 6

*Encyclopedia Britannica, Inc. v. Dickstein Shapiro, LLP*,
   905 F. Supp. 2d 150 (D.D.C. 2012) ....................................................... 19

*Evans v. Cameron*,
   121 Wis.2d 421, 360 N.W.2d 25 (1985) .................................................. 16

*F.S. Bowen Elec. Co. v. Foley*,
   194 Va. 92, 100 (Va. 1952) ...................................................................... 12

*Frank v. Bloom*,
   634 F.2d 1245 (10th Cir. 1980) ............................................................... 26

*Henock v. Schwartz*,
   53 F. Supp. 3d 139 (D.D.C. 2014) ................................................ 8, 10, 13

*Henson v. CSC Credit Servs.*,
   29 F.3d 280, 284 (7th Cir.1994) ................................................................ 7

*Implement Serv., Inc. v. Tecumseh Prods. Co.*,
   726 F. Supp. 1171 (S.D. Ind. 1989) .......................................................... 7

*In re Bogdan*,
   414 F.3d 507 (4th Cir.2005) .................................................................... 15

*In re Derivium Capital, LLC*,
   716 F.3d 355 (4th Cir. 2013) ................................................................... 15

*In Re Dublin Sec., Inc. v. Hurd*,
   133 F.3d 377, 380 (6th Cir. 1997) ........................................................... 16

*In re Greater S.W. Cmty. Hosp. Corp. I v. Tuft*,
   353 B.R. 324 (Bankr. D.C. 2006) ...................................................... 16, 17

*J. W. Woolard Mech. & Plumbing v. Jones Dev.*,
   235 Va. 333 (Va. 1988) ........................................................................... 12

*Lewis v. Pension Benefit Guaranty Corp.*,
   40 F. Supp. 3d 147 (D.D.C. 2014) ............................................................ 6

*Mack v. South Bay Beer Distribs.*,
   798 F.2d 1279 (9th Cir.1986) .................................................................... 7

*Marshall County Health Care Auth. v. Shalala*,
   988 F.2d 1221 (D.C. Cir. 1993) ................................................................ 6

*Mazer v. Sec. Ins. Grp.*,
   368 F. Supp. 418 (E.D. Pa. 1973) ........................................................... 14

iv

*McCartney v. Dunn & Conner, Inc.*,
   563 A.2d 525 (Pa. Super. 1989) ............................................................... 24

*McConwell v. FMG of Kansas City, In*c.,
   18 Kan. App.2 d 839, 861 P.2d 830 (Kan. 1993) ...................................... 24

*Mills v. Cooter*,
   647 A.2d 1118 (1994) ................................................................................ 14

*Mount v. Baron*,
   154 F. Supp. 2d 3 (D.D.C. 2001) ..................................................... 7, 9, 21

*New Hampshire v. Maine*,
   532 U.S. 742, 121 S. Ct. 1808 (2001) ....................................................... 19

*Nix v. Fulton Lodge No. 2*,
   452 F.2d 794 (5th Cir.1972) ......................................................................... 7

*Papasan v. Allain*,
   478 U.S. 265, 106 S. Ct. 2932 (1986) .................................................... 6, 14

*Phillips v. Bureau of Prisons*,
   591 F.2d 966 (D.C. Cir. 1979) ..................................................................... 6

*Pinter v. Dahl*,
   486 U.S. 622, 108 S. Ct. 2063 (1988) ....................................................... 16

*Quick v. Samp*,
   697 N.W.2d 741 (S.D.2005) ...................................................................... 16

*Rocha v. Brown & Gould, LLP*,
   101 F. Supp. 3d 52 (D.D.C. 2015) .................................................. 7, 14, 18

*Seed Co. Ltd. v. Westerman, Hattori, Daniels & Adrian, LLP*,
   961 F.3d 1190 (D.C. Cir. 2020) .............................................................. 9, 18

*Smith v. Haden*,
   872 F. Supp. 1040 (D.D.C. 1994) ................................................................ 7

*Smith v. Public Defender Service for the Dist. of Columbia*,
   686 A.2d 210 (D.C. 1996) ............................................................................ 7

*Thompson v. Halvonik*,
   36 Cal App. 4th 657 (Ca. 1995) ........................................................... 24, 25

*Tillman v. Shofner*,
   90 P.3d 582 (Okla. Ct. Civ. App. 2004) .................................................... 16

v

*Whiteaker v. State of Iowa*,
    382 N.W.2d 112 (Ia. 1986) ................................................................................. 24

*Woodruff v. Tomlin*,
    616 F.2d 924 (1980) .......................................................................................... 26

*Yarn v. Hamburger Law Firm, LLC*,
    No. RDB–12–3096,
    2013 WL 5375462 (D. Md. Sept. 24, 2013) ........................................................ 15

*Zee Co., Inc. v. Williams, Mullen, Clark and Dobbins, P.C.*,
    871 F. Supp. 2d 498 (E.D. Va. 2012) ................................................................. 23

**Rules**

Fed. R. Civ. P. 12(b)(6) ..................................................... 3, 5, 8, 14, 16, 17, 18, 19, 20, 23, 25, 26

**Regulations**

18 Moore's Federal Practice § 134.31 (3d ed. 2012) ................................................... 20

Virginia Consumer Protection Act, Va. Code Ann. § 1115(C) ..................................... 12

Virginia Consumer Protection Act, Va. Code Ann. § 54.1-1100 ................................. 11

Virginia Consumer Protection Act, Va. Code Ann. § 54.1-1103(A) ............................ 11

Virginia Consumer Protection Act, Va. Code Ann. § 54.1-1115(A) ............................ 11

Virginia Consumer Protection Act, Va. Code Ann. § 54.1-1115(B) ............................ 11

Virginia Consumer Protection Act, Va. Code Ann. § 54.1-1115(B)(i) ......................... 11

Virginia Consumer Protection Act, Va. Code Ann. § 54.1-1115(C) ............................ 12

Virginia Consumer Protection Act, Va. Code Ann. § 59.1-200 ............................. 4, 11

Virginia Consumer Protection Act, Va. Code Ann. § 59.1-200.46 .............................. 11

# I.    INTRODUCTION

Androus's Counterclaim is merely a defensive tactic employed by Androus to avoid payment of the legal fees sought in the Complaint.[1]  As discussed below, Androus's allegations in the Counterclaim are belied by the record in the Underlying Litigation.  *See* Countercl., ¶ 12.  The dubious nature of these claims is perhaps best illustrated by the observations of Judge James C. Clark who presided over the Underlying Litigation and trial.  After the case was submitted to the jury, Judge Clark stated:

> I mean, I've tried a lot of cases.  I've presided over a lot of cases.  I've seen a lot of cases.  And I've got to tell you.  I really don't think I've ever seen a case as better tried by all six – any of the six lawyers in this case could've taken the lead and done a perfectly fine job.
>
> I've never seen a better prepared case.  I've got no idea how it's going to turn out.  But – although I know you spent a lot – this is one of the few cases where both sides got their money's worth and then some.
>
> And well, like I said, don't take it the wrong way.  You don't need me telling you how to do your work.  But it was – you all did a pretty amazing job, all six of you.  So we'll wait for the verdict and the jury.

(*See* Trial Tr. (11/4/19) 311:14-312:13, a true and correct copy of which is attached as **Exhibit A**)[2].  After the jury returned its verdict against Androus, Judge Clark again complimented Counsel's performance:

> I stand by what I said.  Obviously it didn't go the way both parties wanted it to.  But I can't imagine how anybody on either side could've done a better job than you did.  And both should be very proud of yourselves and the work that you did, at least in my opinion.

*Id.* at 329:11-16.

---

[1] As this Court correctly observed, "[t]his case is a dispute about legal fees."  *Colella v. Androus*, -- F. Supp. 3d -- (D.D.C. 2021) (Contreras, J.), 2021 WL 289373, at *1.

[2] As discussed in III.B. *infra* this Court may take judicial notice of public records as well as court records from a related proceeding in the context of a motion to dismiss.

Trial is a zero sum game, and disappointed expectations alone do not suffice to state a claim for legal malpractice.  Here, the alleged breaches of the standard of care are entirely baseless, and directly contradicted by the record in the Underlying Litigation.  The Counterclaim alleges that Counsel breached the duty of care by:

(a)     Incorrectly advising Counter-Plaintiffs that they had a viable claim for punitive damages against Thomas;

(b)     Incorrectly advising Counter-Plaintiffs that they had a very strong case against Thomas based on its lack of a construction license;

(c)     Incorrectly advising Counter-Plaintiffs that there was nothing wrong with conveying the Property to 2208 RR AVA, assisting them with that transaction, and advising them not to convey the Property back to 2208 Russell Road after Counter-Plaintiffs were sued for fraudulent conveyance by Thomas;

(d)     Failing to manage and supervise the selection and preparation of expert witnesses to support Counter-Plaintiffs' claims, including but not limited to failing to alert Harding before his deposition that Androus had revised his estimate of repair downward;

(e)     Failing to engage in significant settlement negotiations with Thomas prior to trial, despite Androus's requests to do so, and instead encouraging Counter-Plaintiffs to go to trial with the expectation of a large verdict in Counter-Plaintiffs' favor; and

(f)     Utilizing an overly aggressive litigation style at trial, which antagonized the judge and the jury.

*See* Countercl. ¶¶ 37 (a)-(f).  However, there is no factual support for these claims in either the Counterclaim or in court record in the Underlying Litigation.

***First***, any advice by Mr. Colella regarding the availability of punitive damages was not (nor could it ever be) the cause of Androus's alleged damages – an adverse verdict and judgment.  *See* Countercl., ¶38.  In point of fact, the jury was instructed on punitive damages without any reference to a cap.

***Second***, the Virginia Consumer Protection Act ("VCPA") afforded Androus both a good

2

defense to Thomas's breach of contract claims in the Underlying Litigation as well as a counterclaim based upon Thomas's admitted lack of a construction license.

*Third*, Androus's claim arising from his own decision to transfer the Property is subject to *in pari delicto,* statute of limitations, and judicial estoppel defenses.

*Fourth*, expert witness Jeffrey Resetco ("Resetco") testified at trial about the numerous construction defects that he observed at Androus's property.   Moreover, Randy Harding ("Harding"), a fact witness, also testified at trial.  While one of Harding's estimates could not be authenticated and was inadmissible at trial, the reason for its inadmissibility was Androus's secret adjustment of the estimate without advising either Harding or Counsel.

*Fifth*, Androus's claim alleging a "failure to settle" is impermissibly speculative.

*Finally*, an attorney's litigation style is not a proper basis for a claim of malpractice. Accordingly, the Counterclaim fails to state a plausible claim against Counsel and should be dismissed pursuant to Rule 12(b)(6).

## II.    FACTUAL ALLEGATIONS

The Underlying Litigation concerned a dispute between Androus and Thomas Brothers Enterprises, LLC ("TBE") and Brian Thomas (collectively "Thomas") over the construction of a custom house.  Countercl. at ¶¶ 6-7.  In October of 2015, Androus contracted with Thomas to both purchase and remodel property located at 2208 Russell Road, Alexandria, Virginia (the "Property").  *Id.* at ¶ 7.  As part of the transaction, Androus signed a promissory note (the "Note") in the amount of $1.6 million, which was secured by a construction loan deed of trust (the "Deed of Trust").  *Id.*

The parties' relationship soon deteriorated, however, due to concerns about construction defects at the Property.  *Id.* at ¶¶ 6-8.  On August 2, 2017, Androus entered into a written

engagement agreement with the law firm of Duane Morris in Washington, D.C. to handle the dispute. *Id.* at ¶ 8.  The Underlying Litigation had not commenced at that time.

On <u>October 24, 2017</u>, the entity that purchased the Property - 2208 Russell Road LLC - conveyed the Property to Androus who then conveyed it to 2208 RR AVA LLC.  *Id.* at ¶ 10. Androus alleges that Mr. Colella either "assisted in or had knowledge of" the transfers, but fails to provide any factual support for this vague allegation.[3]  *Id.*

On <u>July 19, 2018</u>, Thomas filed suit against Androus alleging that the aforementioned transfers of the Property were fraudulent conveyances.  *Id*. at ¶ 12.  On <u>October 30, 2018</u>, Mr. Colella filed an Answer and Counterclaim in the Underlying Litigation on behalf of Androus, alleging violation of the VCPA[4], Va. Code Ann. § 59.1-200, fraudulent inducement, breach of contract, and declaratory judgment.  *Id.* at ¶15.  Thomas later amended its pleading to allege additional claims for breach of contract and unjust enrichment, seeking roughly $1.6 million in damages, plus interest.  *Id.* at ¶ 16

Counsel subsequently left Duane Morris and joined the law firm of Culhane Meadows.  *Id.* at ¶ 18.  Androus signed the new engagement letter, which is the operative agreement in this case (the "Engagement Letter").  *See* ECF No. 1-1.  The Engagement Letter provides that Mr. Colella was the "Responsible Attorney" for the matter.  *Id.*; *see also* Countercl. at ¶ 19.  The Engagement Letter provides, in relevant part that, "[a]lthough we will do our best to serve you effectively, we

---

[3] In point of fact, Androus testified at trial that he made the transfers because of his concerns about the construction defects at the Property and his concern that Thomas was not licensed.  He further testified that the transfers were part of a broader estate planning scheme for the benefit of his family.  *See* IV.D, *infra*.

[4] Androus' defense to the fraudulent conveyance claim was that the Deed of Trust and Note were unenforceable pursuant to Virginia's contractor licensing statute, which declares a "construction contract" unenforceable if the contractor is unlicensed.  Thomas admitted at trial that it did not have a contractor's license. *See* IV. C, *infra*.

cannot guarantee success on any given matter.  Nor do we guarantee that we will attain any particular result."  ECF No. 1-1 at p. 2 (Professional Undertaking).  Mr. Zefutie assisted Mr. Colella with the preparation for and conduct of the trial of the Underlying Litigation, which commenced on <u>October 28, 2019</u>.  Countercl. at ¶ 20.

After a six day trial, on <u>November 4, 2019</u>, the jury entered a verdict in favor of Thomas and against Androus.  The verdict was also against Androus on the Counterclaim and Third Party Complaint.  Countercl. at ¶ 30.  Androus alleges that he has incurred damages in the amount of $2,600,000—the amount of the judgment plus post judgment interest; overpayment of attorney's fees in the amount of $300,000.00; attorneys' fees for appellate counsel; and the cost of bond pending appeal in the amount of $100,000.00.  *Id.* at ¶ 38.

### III.    LEGAL STANDARD

#### A.    <u>Fed. R. Civ. P. 12(b)(6)</u>

Federal Rule of Civil Procedure 12(b)(6) authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted.  A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007).  Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action" in order to survive a motion to dismiss.  *Twombly,* 550 U.S. at 555.  The legal claims in the complaint must be supported by factual allegations that "raise a right to relief above the speculative level."  *Id.* at 570.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice to plead a claim**.** *See Ashcroft v. Iqbal*, 556 U.S. 662, 663, 129 S. Ct. 1937, 1949, (2009).  A complaint that tenders "naked assertion[s]" devoid of "further factual enhancement" does not suffice.  *See Iqbal,* 556 U.S. at 678 (quoting

*Twombly*, 550 U.S. at 555, 557). "When the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown— that the pleader is entitled to relief." *Id.* at 679. Nor is the Court bound to accept as true a legal conclusion couched as a factual allegation, or allegations that are mere conclusions, unwarranted deductions of fact, or unreasonable inferences. *See Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, (1986).

### B.     Judicial Notice[5]

In determining whether a complaint fails to state a claim, the court may consider facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which the court may take judicial notice. *See Baker v. Henderson*, 150 F. Supp. 2d 13, 15 (D.D.C. 2001) (citing *E.E.O.C. v. St. Francis Xavier Parochial School*, 117 F.3d 621, 625 (D.C. Cir. 1997); *see also Lewis v. Pension Benefit Guaranty Corp.*, 40 F. Supp. 3d 147, 150 (D.D.C. 2014) (the Court may consider "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss"). The Court may take judicial notice of matters of a general public nature, such as court records, without converting the motion to dismiss into one for summary judgment. *See Baker*, 150 F. Supp. 2d at 15 (taking judicial notice of court record) (citing *Marshall County Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993); *Phillips v. Bureau of Prisons,* 591 F.2d 966, 969 (D.C. Cir. 1979) (court may consider items in the record of the case or of a general

---

[5] Attached as Exhibits A-I to the Motion to Dismiss are portions of the trial transcript and certain records from the Underlying Litigation. Counsel request that this Court take judicial notice of these documents, because not only are they public documents, they are also records from a related proceeding (the Underlying Litigation) that is the subject matter of this case. Should this Court deem any or all of Exhibits A-I to be outside of the pleadings, Counsel withdraws the exhibit(s) from the Court consideration for purposes of this Motion to Dismiss.

public nature).

In *Smith*, the Court took judicial notice of opinions and orders, a brief and a transcript from a related case in hearing defendant's Rule 12(b)(6) motion to dismiss.  *See Smith v. Public Defender Service for the Dist. of Columbia* 686 A.2d 210, 212 (D.C. 1996) (citing *Henson v. CSC Credit Servs.,* 29 F.3d 280, 284 (7th Cir.1994) (documents filed in other state court proceedings not considered "matters outside the pleadings"); *Mack v. South Bay Beer Distribs.,* 798 F.2d 1279, 1282 (9th Cir.1986) (administrative records and reports and matters of public record not "matters outside the pleadings"); *Nix v. Fulton Lodge No. 2,* 452 F.2d 794, 797-98 (5th Cir.1972) (court opinions); *Implement Serv., Inc. v. Tecumseh Prods. Co.,* 726 F. Supp. 1171, 1175 - 76 (S.D. Ind. 1989) (public records and documentary complaint exhibits).  Thus, proceedings in related cases may be judicially noticed and considered in the context of a motion to dismiss.  *See Smith*, 686 A.2d at 212 (citing *Cannon v. District of Columbia,* 569 A.2d 595, 597 n. 3 (D.C.1990)).

## IV.    ARGUMENT

To prevail on a legal malpractice claim, a plaintiff must sufficiently allege the applicable standard of care, a breach of that standard by the attorney, and that the attorney's breach proximately caused the complained of harm.  *See Rocha v. Brown & Gould, LLP*, 101 F. Supp. 3d 52, 74-75 (D.D.C. 2015) (Contreras, J.) (citing *Biomet Inc. v. Finnegan Henderson LLP*, 967 A.2d 662, 664 (D.C. 2009)); *see also Smith v. Haden*, 872 F. Supp. 1040, 1044 (D.D.C. 1994); *Martin v. Ross*, 6 A.3d 860 (D.C. 2010).

Causation between the alleged breach of duty and the alleged harm is an essential element in a claim for legal malpractice in the District of Columbia.  Thus, the Counterclaim must adequately plead that Counsel's alleged negligence was the proximate cause of Androus's damages.  *See Mount v. Baron*, 154 F. Supp. 2d 3, 9-10 (D.D.C. 2001).  Simply alleging a breach of the standard of care

is not enough.  "[T]he plaintiff must demonstrate that absent the defendants' alleged negligence, he would have prevailed on an otherwise meritorious claim."  *Henock v. Schwartz*, 53 F. Supp. 3d 139, 142 (D.D.C. 2014).

Here, the Counterclaim fails to plead a plausible claim for legal malpractice, because it fails to allege any set of facts from which this Court may plausibly infer that Counsel breached a duty of care or that any such breach caused the damages alleged.  Rather, the allegations of the Counterclaim coupled with the court record from the Underlying Litigation demonstrate that Counsel diligently and competently represented the interests of Androus at every stage of the Underlying Litigation.  Accordingly, the Counterclaim must be dismissed pursuant to Rule 12(b)(6), because it fails to adequately plead a plausible claim for relief.

A.   **Androus Does Not Allege that Mr. Zefutie Provided Advice Concerning Punitive Damages, Property Transfers or the VCPA, or that He Employed an <u>Aggressive Litigation Style at Trial</u>.**

As an initial matter, the portions of the Counterclaim concerning punitive damages, the transfers of Androus's property, and the VCPA bear no mention of Mr. Zefutie or his involvement on these matters.  Nor does the Counterclaim allege that Mr. Zefutie employed an aggressive litigation style.  *See, e.g.*, Countercl. at ¶¶ 10, 11, 13, 14, 15, 20 and 27.  A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

Here, there are ***no*** factual allegations concerning Mr. Zefutie's involvement in these matters.  Indeed, the Complaint, which barely mentions Mr. Zefutie, acknowledges that his involvement was limited to assisting Mr. Colella with the preparation for and conduct of the trial. *See* Countercl. at ¶ 20.  Accordingly, the portions of the Counterclaim concerning punitive damages, property transfers, the VCPA, and litigation style must be dismissed as to Mr. Zefutie,

because the Counterclaim alleges no facts from which this Court can reasonably infer that Mr. Zefutie provided any advice on these topics or employed an aggressive style during the trial in the Underlying Litigation.

### B. The Punitive Damages Instruction Did Not Reference a Cap.

Androus contends that during the Underlying Litigation, Mr. Colella[6] advised him that he had a viable claim for punitive damages, which could result in up to nine times the actual damages. *See* Countercl. at ¶ 14.   Androus then contends that punitive damages are rarely awarded in commercial disputes and are capped at $350,000.00 in Virginia.  *Id.*   Counsel allegedly breached the standard of care by, "[i]ncorrectly advising [Androus] that he had a viable claim for punitive damages.  *Id.* at ¶ 37(a).  This portion of the Counterclaim should be dismissed, because it fails to allege any set of facts from which this Court can reasonably infer that Mr. Colella's advice was the proximate cause Androus's alleged damages—an essential element in a claim for legal malpractice.  *See Mount v. Baron*, 154 F. Supp. 2d at 8.

The Counterclaim contains no factual allegations demonstrating that Colella's alleged advice to Androus concerning punitive damages resulted in the jury's verdict and judgment against him.  *Compare* Countercl., ¶ 37(a) *with* ¶ 38(a) (alleging damages in the form of the judgment).  Nor could it.   Androus's punitive damages claim was an ***affirmative claim*** for relief against Thomas and had nothing to do with his ***defense*** to Thomas'ss claims for fraud and breach of contract.  *See* Countercl. at ¶ 14.  Nor does the Counterclaim allege that the verdict against Androus was a foreseeable result of Mr. Colella's alleged conduct.  *See Seed Co. Ltd. v. Westerman, Hattori, Daniels & Adrian, LLP*, 961 F.3d 1190, 1196 (D.C. Cir. 2020).

---

[6] Androus does not allege that Mr. Zefutie provided any advice - negligent or otherwise - about punitive damages.  *See* Point IV.A., *supra*.

More importantly, the issue of punitive damages was submitted to the jury. The jury received a very broad instruction, which read as follows:

> If you find that the Androus parties or any of them are entitled to compensation for their damages, and if you further believe by the greater weight of the evidence that TBE or Mr. Thomas acted with actual malice toward the Androus parties, or acted under circumstances amounting to willful and wanton disregard of the Androus parties' rights, then you may also award punitive damages to the Androus parties to punish TBE, and/or Mr. Thomas, for its or his actions, and to serve as an example to deter him and others from acting in a similar way. If you award punitive damages, you must state separately in your verdict the amount you allow for compensatory damages and the amount that you allow for punitive damages.

(A true and correct copy of Jury Instruction 39 is attached as **Exhibit B**). Clearly, the instruction did not mention a $350,000.00 cap. *See* Ex. B. Thus, the jury had the occasion to consider punitive damages without any reference to a cap.

An adverse jury verdict standing alone cannot be the basis for a malpractice claim. More is required. *See Henock*, 53 F. Supp. 3d at 142 ("[T]he plaintiff must demonstrate that absent the defendants' alleged negligence, he would have prevailed on an otherwise meritorious claim."). Androus cannot do this. Accordingly, this portion of the Counterclaim should be dismissed with prejudice, because the Counterclaim cannot adequately allege a claim against Counsel on this basis. *See Twombly*, 550 U.S. at 570.

### C.   Virginia Law Afforded Androus Both a Good Defense and Counterclaim against Thomas.

The Counterclaim contends that Mr. Colella[7] negligently advised Androus that he had an actionable Counterclaim under the VCPA due to Thomas not possessing a Virginia contractor's license. *See* Countercl. at ¶ 37(b). Androus states that Mr. Colella provided advice about the

---

[7] Androus does not allege that Mr. Zefutie provided any advice - negligent or otherwise - about the VCPA. *See* Point IV.A., *supra*.

"basic claims [Androus] may be able to assert against Thomas" including "[c]laims for violation of the Virginia Consumer Protection Act . . . ."  and drafted a letter to Thomas describing "[o]n-going problems with the construction" and advising that, Thomas's lack of a contractor's license violated the VCPA.  *See* Countercl. at ¶¶ 9, 11.  Mr. Colella purportedly advised Androus that he had a very substantial claim against Thomas, based on Thomas's shoddy construction work and its lack of a contractor's license in Virginia."  *See* Countercl. at ¶ 14.  Critically absent from these allegations, however, is any allegation that Androus did ***not*** have a claim/defense under the VCPA. Once again, the Counterclaim fails to adequately allege either a breach of the duty of care, or causation.

### 1.     *Mr. Colella Properly Advised Androus on his VCPA Claim/Defense.*

First, there was no breach of the standard of care.  Virginia law clearly requires that contractors be licensed.  Va. Code Ann. § 54.1-1103(A) ("No person shall engage in . . . contracting work in the Commonwealth unless he has been licensed under the provisions of this chapter . . . .") The Code further proscribed the following acts, in relevant part:

1.     Contracting for, or bidding upon the construction, removal, repair or improvements to or upon real property owned, controlled or leased by another person without a license or certificate, or without the proper class of license as defined in § 54.1-1100 for the value of work to be performed.

2.     Attempting to practice contracting in the Commonwealth, except as provided for in this chapter.

3.     Presenting or attempting to use the license or certificate of another . . . .

*See* Va. Code Ann. § 54.1-1115(A).

Moreover, a violation of § 54.1-1115(B)(i) (Undertaking to work without … a valid Virginia contractor's license or certificate when required) is a "prohibited practice" under Va. Code Ann. § 59.1-200 ("VCPA").  *See* Va. Code Ann. §§ 54.1-1115(B), 59.1-200.46.  Finally, §

54.1-1115(C) expressly provides:

> ***A construction contract entered into by a person undertaking work without a valid Virginia contractor's license shall not be enforceable by the unlicensed contractor*** undertaking the work unless the unlicensed contractor (i) gives substantial performance within the terms of the contract in good faith and (ii) did not have actual knowledge that a license or certificate was required ….

*See* Va. Code Ann. § 54.1-1115(C) (Emphasis added).

Virginia's policy of prohibiting unlicensed contractors from engaging in construction-related services has been in place for over a half-century. These statutes "prohibit[] unqualified persons- that is, those who have not registered or taken out the required license from entering into such an agreement." *Cohen v. Mayflower Corp.*, 196 Va. 1153, 1161 (Va. 1955). If a person is not a licensed contractor, he may not recover on his construction contract. "[A] contract made in violation of a police statute enacted for the public protection is void and there can be no recovery thereon." *F.S. Bowen Elec. Co. v. Foley*, 194 Va. 92, 100 (Va. 1952); *Cohen*, 196 Va. at 1161 (denial of recovery under the Contractor Licensing Statute "rests upon the illegality of the plaintiffs conduct, not on the nature of the transaction"); *Bowers Family Enters. v. Davis Bros. Constr.*, 55 Va. Cir. 11 , *1 (Richmond 2001) (holding that Va. Code Ann.§ 1115(C) acts as a bar to contract claims brought by an unlicensed contractor); *J. W. Woolard Mech. & Plumbing v. Jones Dev.*, 235 Va. 333, 337-48 (Va. 1988)` (discussing the history and purpose of the Contractor Licensing Statute).

At trial, Thomas admitted under oath that neither he nor TBE had a contractor's license and thought such a requirement was a "joke." (*See* Trial Tr. (10/28/19) 185:19-22 (Thomas admitting he hired other general contractors because "I'm not licensed"); 196:14-18 (Thomas admitting his company was not licensed because "that's not the role I want"); 197:5-6 (Thomas testifying that the licensing requirement is "a joke") a true and correct copy of which is attached as **Exhibit C**).

Accordingly, these provisions of the Virginia Code provided a good defense to Thomas's contractual claims against Androus as well as a good-faith basis for pursing a counterclaim. The Counterclaim does not allege any facts from which this Court can reasonably infer otherwise.

### 2.  The Counterclaim Fails to Allege Damages Due To Mr. Colella's Advice on the VCPA.

Nor does the Counterclaim allege facts from which this Court can reasonably infer that Mr. Colella's advice about the VCPA resulted in the alleged damage. Countercl. at ¶38. An adverse jury verdict standing alone cannot be the basis for a malpractice claim. *See Henock*, 53 F. Supp. 3d at 142. Indeed, the Counterclaim does not allege that Mr. Colella's advice about the VCPA caused Androus's alleged damages, but rather "problems with the expert reports and the conveyance of the Property, as well as Colella's overly aggressive litigation style" are allegedly to blame.[8] Countercl. at ¶ 35.

Furthermore, one can only assume that the Court would not have allowed a meritless claim to go to the jury. At trial, the jury was instructed on the VCPA and was specifically instructed that not possessing a contractor's license violates the VCPA. (A true and correct copy of Jury Instructions 23-26 are attached as **Exhibit D**). Accordingly, this portion of the Counterclaim fails to allege sufficient facts to state a claim that is plausible on its face and must be dismissed. *See Twombly*, 550 U.S. at 570.

### 3.  Advising Androus that He Had a "Strong Case" Based upon Thomas's Lack of a Construction License Is Protected by the Judgmental Immunity Rule.

An attorney is not liable for alleged mistakes made in the honest exercise of professional judgment. *See Biomet, supra* at 665. That basic proposition is recognized in the District of

---

[8] These claims are addressed in IV. D, E and G *infra*.

Columbia as the judgmental immunity rule.  *Id.*; *see also Rocha*, 101 F. Supp. 3d at 74-77.  As the

Court in *Biomet* observed:

> Central to the [judgmental immunity] doctrine is the understanding that an attorney's
> judgmental immunity and an attorney's obligation to exercise reasonable care
> coexist such that an attorney's non-liability for strategic decisions is conditioned
> upon an informed judgment after undertaking reasonable research of the relevant
> legal principles and facts of the given case.

*Biomet, supra,* at 666; *see also Mills v. Cooter*, 647 A.2d 1118, 1122 (1994) ("An informed

judgment, even if subsequently proven to be erroneous, is not negligence.") (quoting *Mazer v. Sec.*

*Ins. Grp.*, 368 F. Supp. 418, 423 (E.D. Pa. 1973).

There is good reason to apply this rule here.  The crux of the Counterclaim is that Androus

lost at trial despite being advised by Mr. Colella that he had a "strong case."  But as the law of

Virginia set forth above demonstrates, Androus did indeed have a strong case based on Thomas's

lack of a contractor's license.  Nowhere in the Counterclaim does Androus allege facts from which

this Court can reasonably infer otherwise.  Indeed, Androus does not allege that Counsel missed an

issue or failed to properly apply Virginia law.  *See Rocha*, 101. F. Supp. 3d at 77.  The standard of

care is not clairvoyance—an attorney is not charged with accurately predicting how a jury might

apply or decide a case based on an otherwise sound legal theory.  *See Mills*, 647 A.2d at 1122.

Accordingly, the Counterclaim must be dismissed for failure to state a plausible claim

pursuant to Rule 12(b)(6).  *See Iqbal*, 556 U.S. at 678 (a pleading is insufficient if it simply tenders

"naked assertions" devoid of "further factual enhancement."); *Papasan*, 478 U.S. at 286 (the Court

is not bound to accept as true "mere conclusions, unwarranted deductions of fact, or unreasonable

inferences").

**D.**   **Androus's Claim Relating to His Transfers of the Property Must Be**
         **Dismissed.**

The Counterclaim alleges that Counsels' advice in connection with Androus's transfers of

14

the Property was a breach of the duty of care.  *See* Countercl. at ¶37(c).  Androus claims that Mr.

Colella[9] either "assisted in or had knowledge of" the transfers of the Property from 2208 Russell

Road to Androus, and then from Androus to a third entity, 2208 RR AVA.  *See* Countercl. at ¶ 10.

After Androus was sued by Thomas, Androus allegedly asked Mr. Colella if 2208 RR AVA should

deed the Property back to 2208 Russell Road to which Mr. Colella advised he should not.  *See*

Countercl. at ¶ 13.  At trial, Androus was specifically asked why he transferred the property.  *See*

Countercl. at ¶ 29.  He testified that he transferred the property because of all of the construction

defects at the property coupled with the fact that Thomas was not a licensed contractor in Virginia.

(*See* Trial Tr. (10/29/19) 418:2-422:8 a true and correct copy of which is attached as **Exhibit E**).

He then testified that the transfers were part of a broader estate planning scheme for the benefit of

his family.  *Id.*  Thus, Androus admitted to making the allegedly fraudulent transfers under oath.

*Id.*

### 1.    *In Pari Delicto*

The doctrine of i*n pari delicto* is an affirmative defense.  It acts to preclude a plaintiff who

participated in the same wrongdoing as alleged against the defendant from recovering damages

arising from the wrongdoing. *See In re Derivium Capital, LLC*, 716 F.3d 355, 367 (4th Cir. 2013)

(citing *In re Bogdan*, 414 F.3d 507, 514 (4th Cir.2005).  The doctrine stands for the proposition

that, "When plaintiff and defendant have each participated in fraudulent or illegal conduct … and

are *in pari delicto*, plaintiff cannot maintain suit … directly arising out of the misconduct."  *See*

*Yarn v. Hamburger Law Firm, LLC*, No. RDB–12–3096, 2013 WL 5375462, at *10 (D. Md. Sept.

24, 2013) (citing *Adams v. Manown*, 328 Md. 463, 487, 615 A.2d 611, 623 (1992)).  Thus, in cases

---

[9] Androus does not allege that Mr. Zefutie provided any advice - negligent or otherwise - bout the property transfers.  *See* Point IV.A., *supra*.

of equal fault, the defendant has the better position. *Id.* The defense is limited to situations where the plaintiff bore at least substantially equal responsibility for his injury, and where the parties' culpability arises from the same illegal act. *See In re Greater S.W. Cmty. Hosp. Corp. I v. Tuft*, 353 B.R. 324, 362 (Bankr. D.C. 2006) (citing *Pinter v. Dahl*, 486 U.S. 622, 632, 108 S. Ct. 2063 (1988)). Thus, Androus cannot recover damages from Mr. Colella, if Androus bears equal or greater fault in the alleged fraudulent transfers at issue.

This defense is appropriate for resolution in a Rule 12(b)(6) motion to dismiss where, as here, there is no plausible factual scenario under which Androus would not be subject to the defense. *See In re Greater S.W. Cmty. Hosp. Corp. I v. Tuft*, 353 B.R. at 369. Moreover, *in pari delicto* may be invoked by attorneys in a legal malpractice suit. *See Id.* (citing *in re Dublin Sec., Inc. v. Hurd,* 133 F.3d 377, 380 (6th Cir. 1997) (rejecting public policy argument in holding that legal malpractice claim was barred because the plaintiff was *in pari delicto*); *accord Quick v. Samp*, 697 N.W.2d 741, 745–48 (S.D.2005); *Evans v. Cameron*, 121 Wis.2d 421, 360 N.W.2d 25, 29 (1985) ; *Tillman v. Shofner*, 90 P.3d 582, 584–86 (Okla. Ct. Civ. App. 2004).

Here, Androus's claims against Mr. Colella arising from his allegedly fraudulent transfers of the property in the Underlying Litigation fail as a matter of law, because even if Mr. Colella "assisted in or had knowledge of" the transfers, (which he disputes), ***Androus admitted under oath that it was his intention to make the transfers, and that he did transfer the property***. *See* Ex. E. 418/2 – 422/8. Thus, at a minimum, Androus is *in pari delicto* with Mr. Colella, because it was Androus's clear intention to make the conveyances.

Noticeably absent from Androus's testimony at trial was any assertion that the allegedly fraudulent transfers were carried out upon the advice of Counsel. *Id.* Androus had every opportunity to invoke the advice of counsel defense during the Underlying Litigation. In point

fact, Counsels' involvement in the transfers was adjudicated in the Underlying Litigation pursuant to a Motion to Compel attorney/client communication under the "crime/fraud" exception to the attorney-client privilege.  (A true and correct copy of Thomas's Motion to Compel is attached as **Exhibit F**).  Thomas argued that such communications were discoverable, because Counsel for Androus were complicit and assisted in the transfers.  *See* Ex. F pp.5-8.  After an *in-camera* review of all attorney/client communications, however, the Court denied the Motion to Compel, stating, in relevant part:

> Upon consideration of … ("Plaintiff") Motion to Compel Production of Documents comprising of communications between Defendants/Counterclaim Plaintiffs … and their counsel concerning the alleged fraudulent conveyance in this matter, and upon this Court's *in camera* review of the documents that are the subject of this motion … ***such documents are not relevant to any material issue in this matter***.

(A true and correct copy of the Order on Thomas's Motion to Compel is attached as **Exhibit G**) (Emphasis added).  Clearly, the Court found no evidence of wrongdoing by Counsel.  As such, Androus's culpability in the alleged fraudulent transfers of the property is unquestionably equal to or greater than that of Mr. Colella.  *See In re Greater S.W. Cmty Hosp. Corp. I*, 353 B.R. at 362. ("The defense is limited to situations where the plaintiff bore at least substantially equal responsibility for his injury, and where the parties' culpability arises from the same illegal act".)

In light of Androus's admitted transfers of the property (Countercl. at ¶¶ 10 and 13), his admissions at trial (Ex. E 418/2-422/8) and the Court's ruling finding no wrongdoing by Counsel in connection with Androus's transfers of the property, this portion of the Counterclaim is barred by the doctrine of *in pari delicto*.  Indeed, there is simply no plausible factual scenario under which Androus could not be subject to this defense.  *See In re Greater S.W. Hosp. Corp. I*, *supra* at 369 (court may decide issue of *in pari delicto* on Rule 12(b)(6) motion to dismiss where there is no

plausible factual scenario under which plaintiff would not be subject to the defense).  Accordingly, Androus's claims on this issue must be dismissed *with prejudice* pursuant to Rule 12(b)(6).

### 2.    *The Statute of Limitations*

The statute of limitations on a legal malpractice claim in the District of Columbia is three years from the date that the cause of action accrues.  *See Seed Co., Ltd. v. Westerman*, 832 F.3d 325, 331 (D.C. 2016).  Androus now contends, nearly four years later, that the transfers of the Property were accomplished "with the assistance or knowledge of" Mr. Colella.  *See* Countercl. at ¶ 10.  Of course, there are no allegations describing how Mr. Colella assisted in the transfers, or what knowledge he possessed about the transfers.  *Id.*  Regardless of the paucity of the allegations, this claim fails as a matter of law, because the transfers were made on <u>October 24, 2017</u>, more than three years ago.

The District of Columbia recognizes the "continuous representation rule," which tolls the statute of limitations on a legal malpractice claim until the representation as to that particular matter has terminated.  *See Rocha*, 101 F. Supp. 3d at 68.  However, that rule is inapplicable here.  First the Counterclaim fails to allege any facts from which this Court can reasonably infer that Mr. Colella represented Androus in connection with the transfers.  On the contrary, Androus feebly claims, without any factual support, that the transfers were made "with the assistance or knowledge of" Mr. Colella (which he disputes).  Countercl. at ¶ 10.

Secondly, even if the Counterclaim can be liberally construed to infer representation by Mr. Colella in connection with the transfers, any such representation as to that discrete matter concluded on <u>October 24, 2017</u>.  Indeed, Androus concedes that he entered into a written engagement agreement with Duane Morris on <u>August 2, 2017</u>.  Countercl. at ¶ 6.  The scope of that engagement agreement was the "dispute" between Thomas and Androus concerning

construction defects at the Property and potential claims that Androus may have against Thomas. *Id* at ¶¶ 6-8. The "dispute" did not include Androus's real estate transfers and/or estate planning. *Id.* Thus, even if the Counterclaim could be reasonably construed to allege that Mr. Colella represented Androus in connection with the transfers, (which it cannot), any such representation necessarily concluded as of <u>October 24, 2017</u>. Accordingly, Androus's claims on this issue must be dismissed *with prejudice* pursuant to Rule 12(b)(6).

### 3.   *Judicial Estoppel*

Androus's claim regarding Mr. Colella's "assistance with or knowledge of" the allegedly fraudulent transfers is likewise barred by judicial estoppel. The doctrine of judicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding. *See Encyclopedia Britannica, Inc. v. Dickstein Shapiro, LLP*, 905 F. Supp. 2d 150, 155 (D.D.C. 2012) (citing *New Hampshire v. Maine*, 532 U.S. 742, 749, 121 S. Ct. 1808 (2001)). "[C]ourts may invoke judicial estoppel where a party assumes a certain position in a legal proceeding, succeeds in maintaining that position, and then, simply because his interests have changed, assumes a contrary position." *See Encyclopedia Britannica, Inc. v, Dickstein Shapiro, LLP*, 905 F. Supp. 2d at 155 (citing *Comcast Corp. v. FCC,* 600 F.3d 642, 647 (D.C.Cir. 2010). Simply put, the logic of judicial estoppel is that "a party should not be changing its position between proceedings." *See Encyclopedia Britannica, Inc.*, 905 F. Supp. 2d at 155.

At trial, Androus testified under oath that he transferred the Property, because of all of the construction defects coupled with the fact that Thomas was not a licensed contractor in Virginia. *See* Ex. E at 418/2-422/8. He then testified that the transfers were part of a broader estate planning scheme for the benefit of his family. *Id.* Thus, Androus admitted to making the allegedly

fraudulent transfers under oath.  At no time did Androus claim that the transfers were, in fact, made upon the advice or assistance of Counsel, as is now alleged in the Counterclaim.  *Compare id. with* Countercl. at ¶10.

More importantly, Counsels' alleged involvement in the alleged fraudulent transfer was specifically reviewed by the Court in the Underlying Litigation.  *See* Ex. F.  Again, after an *in camera* review of all pertinent correspondence between Androus and Counsel, the Court ruled that attorney/client communication was not discoverable under the crime/fraud exception to the attorney/client privilege, stating "[u]pon this Court's *in camera* review of the documents that are the subject of this motion … such documents are not relevant to any material issue in this matter." Ex. G.

Judicial estoppel is an equitable doctrine.  *See* 18 Moore's Federal Practice § 134.31 (3d ed. 2012) (Application of the doctrine of judicial estoppel should be guided by a sense of fairness, with the facts of the particular dispute in mind).  In light of the Court's Order on the Motion to Compel and Androus's prior testimony, it would be wholly inequitable for the Court to allow Androus to change his position regarding the transfers of the Property and assert for the first time that the transfers were made with Mr. Colella's assistance or knowledge.  Accordingly, Androus's claims on this issue must be dismissed *with prejudice* pursuant to Rule 12(b)(6).

### E.   Androus's Dubious Claims about Expert and Fact Witnesses Should Be Dismissed

The Counterclaim alleges that Counsel breached the duty of care by: (1) "failing to manage and supervise expert witnesses" and (2) "failing to alert Harding before his deposition that Androus had revised his estimate of repair downward."  Countercl. at ¶¶ 22, 24, 37(d).  These allegations are simply false, and seek to shift the blame for Androus's questionable conduct to Counsel.

### 1.   *The Counterclaim Based on Expert Witnesses Fails as a Matter of Law.*

The portion of the Counterclaim concerning expert witness Jeffrey Resetco ("Resetco") fails as a matter of law, because Androus cannot adequately plead either a breach of the duty of care, or that any such breach caused the alleged damages.  *See Mount*, 154 F. Supp. 2d at 8.

Resetco was retained as a construction expert.  *See* Countercl. at ¶ 21.  He prepared a one-page cover letter, which was attached to a report prepared by Androus concerning the nature and extent of the construction defects at the property.  The cover letter stated that he reviewed Androus's report and "[c]onfirmed the deficiencies described" therein.  It further stated that [Resetco] "[r]eviewed the estimated costs of remediating the construction deficiencies set forth in the report and I concur … that the costs set forth therein are necessary, fair and reasonable." *See* Countercl. at ¶¶ 21 and 23.

The Counterclaim does not allege any facts, however, from which this Court can infer that Androus suffered any damage as a result of Resetco's retention, nor can it.  To the contrary, Resetco was admitted as an expert witness at trial and testified at length about the numerous construction defects that he observed at Androus's property.  (*See* Trial Tr. (11/1/19) 55:12-56:4; 62:2-173:10 a true and correct copy of which is attached as **Exhibit H**).  Thus, the Counterclaim fails to adequately allege that Counsel breached a duty owed to Androus, or that any such breach caused the damages alleged.  *See Mount*, *supra* at 8; *see also Iqbal, 556 U.S.* at 678 (A complaint that tenders "naked assertion[s]" devoid of "further factual enhancement" does not suffice).

### 2.      *The Counterclaim Ignores Androus's Own Wrongful Conduct.*

The portion of the Counterclaim premised on the testimony of fact witness Randy Harding ("Harding") likewise fails, because it wholly ignores that Androus secretly manipulated Harding's estimate without disclosing his actions to either Harding or Counsel before Harding's deposition.

The Counterclaim alleges that Harding prepared an estimate of the costs to repair the

21

property.  The estimate, which Harding provided to Androus, totaled $859,172.00.  *See* Countercl. at ¶ 22.  Androus apparently disagreed with Harding's estimate and surreptitiously adjusted it downward to $598,386.75.  Countercl. at ¶¶ 22 and 24.  Androus then delivered the estimate to Mr. Colella ***without mentioning that he altered Harding's estimate without Harding's knowledge or consent***.  *See* Countercl. at ¶ 22.  Androus's revisions of Harding's estimate came to light for the first time during Harding's deposition.  *See* Countercl. at ¶ 24.

Nevertheless, Harding was permitted to testify as a fact witness at trial.  (*See* Trial Tr. (10/31/19) 12:7-8; 15:1-7 a true and correct copy of which is attached as **Exhibit I**).  Harding was slated to testify about three estimates that he prepared.  *See* Ex. I at 18:19-48:14.  However, Mr. Zefutie could not introduce the Androus-adjusted estimate to the jury[10].  *See* Countercl. at ¶¶ 24 at 28.  Because Harding could not authenticate the estimate, proper foundation for its admission could not be established.  *See id* and Ex. I at 39:13-40:21.  Indisputably, the "but for" cause of the estimate's inadmissibility was Androus's ill-considered and unilateral decision to alter a witness' document without that witness' knowledge or consent.  Moreover, the Counterclaim does not allege that Androus consulted with Counsel before adjusting Harding's estimate.  *See* Countercl. at ¶ 22.   Nor does it allege that Androus ever informed Counsel of his adjustment of Harding's estimate, or that the adjustment was apparent from the face of the estimate.  *See* Countercl. at ¶ 22.  Thus, it was Androus's ***own actions***, not Counsels', which prevented the admission of Harding's estimate into evidence.

Finally, Androus knew that Counsel would rely on the estimate when he provided it to Mr.

---

[10] Counsel complied with its candor obligations to the Court and disclosed both at the motions *in limine* stage and on the record the fact that Androus downwardly adjusted the estimates.  *See,* Ex. I, 12:20-13:12, 17:2-12.  When Resetco testified, Counsel did not include any information from the Androus-modified estimate.  *See, e.g.*, Ex. H, 60:4-14.

Colella.  The Engagement Letter makes that clear.  In that agreement, Androus agreed that he would warrant the accuracy and completeness of information he provided to Counsel:

> The Firm is not responsible for independently verifying the truth or accuracy of information supplied to [Counsel] by Client or on Client's behalf and delivery of such information to the Firm constitutes Client's warranty of its accuracy and completeness.  In addition, Client understands that the Firm will be relying on Client to review for correctness all applications, pleadings and other communications that we draft or that will or could be submitted to the court, regulatory authorities or be reviewed by examiners or other third parties.

ECF 1-1 at p. 5 (Client Cooperation).

For these reasons, the Counterclaim fails to state a plausible claim for relief against Counsel and must be dismissed pursuant to Rule 12(b)(6).  *See Iqbal*, 556 U.S. at 678 ("When the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief."  *See Iqbal*, 556 U.S. at 679.

### F.      **Androus's Claim about Settlement Negotiations is Impermissibly Speculative.**

Androus alleges that on several occasions he expressed an interest in resolving the dispute, but Mr. Colella and Mr. Zefutie failed to engage in settlement discussions with opposing counsel. Countercl. at ¶¶ 25, 37, 38, *but see* ¶ 11 (Alleging "[I]n the letter, Colella offered Thomas a settlement ….")  This claim is impermissibly speculative and should be dismissed.

While this Court has not addressed the issue of whether a lost settlement opportunity can be a basis for a legal malpractice claim, those courts that have considered the issue invariably agree that such claims are inherently speculative.  *See Zee Co., Inc. v. Williams, Mullen, Clark and Dobbins, P.C.*, 871 F. Supp.  2d 498, 512 (E.D. Va. 2012) (affirming summary judgment "[b]ecause a jury would have to resort to speculation to determine what, if any, settlement would have been reached" making it "impossible … to establish a reasonable measure of damages"); *see*

*also Whiteaker v. State of Iowa*, 382 N.W.2d 112, 116 (Ia. 1986) (observing that "[a]n element of this cause of action is proof that a settlement in an ascertainable amount would have occurred"); *McConwell v. FMG of Kansas City, In*c., 18 Kan. App.2 d 839, 850, 861 P.2d 830 (Kan. 1993) ("In a lost settlement opportunity context … the client must show that the client and the opposing party would have reached a settlement if not for the attorney's negligence"); *Thompson v. Halvonik*, 36 Cal App. 4th 657, 663-64 (Ca. 1995) (rejecting lost settlement claim as too speculative given "the myriad of variables that affect settlements" and further observing that "[N]o expert can suppose with any degree of reasonable certainty the private blends of hopes and fears that might have come together to produce a settlement before or during trial."); *McCartney v. Dunn & Conner, Inc*., 563 A.2d 525 (Pa. Super. 1989)("This Court has not allowed legal malpractice actions based upon speculations regarding settlement negotiations."); *Campbell v. Bloom*, 184 Cal. App. 2d 751, 758 (Ca. 1960) (observing that a  legal malpractice claim based on a lost settlement opportunity falls "in the category of speculation, conjecture and contingency. The basic rules concerning damages preclude recognition of this type of recovery.")

Here, the Counterclaim does not allege even the bare elements of a claim for lost settlement opportunity: (1) that a settlement would have occurred and (2) an ascertainable amount.  *See McConwell v. FMG of Kansas City, In*c., 18 Kan.App.2d 839, 850, 861 P.2d 830 (1993); *see also Thompson v. Halvonik*, 36 Cal App. 4th 657, 663-64 (Ca. 1995).  The Counterclaim does not allege that an invitation to discuss settlement was ever extended by Thomas during the pendency of the Underlying Litigation, or that Thomas was amenable to negotiation.  Thus, no "opportunity" to have reached a settlement is alleged.

As such, the Counterclaim alleges **no** facts demonstrating a breach of care by Counsel, or that such breach was the proximate cause of Androus's alleged damages.  Indeed, under these

facts, "[n]o expert could suppose with any degree of reasonable certainty the private blends of hopes and fears that might have come together to produce a settlement before or during trial" in this case. *See Thompson v. Halvonik*, 36 Cal App. 4th at 663-64. When the facts alleged do not permit the court to infer more than the mere possibility of misconduct, the Complaint has not shown that the pleader is entitled to relief. *See Iqbal*, 556 U.S. at 679. Accordingly, the alleged failure to engage in meaningful settlement negotiations is factually insufficient to state a plausible claim for relief, and must be dismissed *with prejudice* pursuant to Rule 12(b)(6).

### G. Litigation Style Is Not a Basis for a Legal Malpractice Claim.

Androus complains that Mr. Colella[11] employed an aggressive litigation style and that the jury was "clearly unimpressed by his performance". Countercl. at ¶¶ 27, 35, 37, 38. No additional facts are alleged in support this claim.

This claim fails as a matter of law, because it rests entirely upon a single, vague and subjective allegation that "the jury was clearly unimpressed." *See* Countercl. at ¶ 27. Indeed, the Counterclaim does not allege that Androus objected to Mr. Colella's style, or that Mr. Colella was admonished by the Court for conducting himself in an aggressive manner. *Id.* In fact, the Counterclaim fails to allege *any* set of facts from which this Court can plausibly infer that (1) Mr. Colella's litigation style breached a duty of care owed to Androus or (2) that Mr. Colella's litigation style caused the damages alleged by Androus. Indeed, the Counterclaim fails to allege factual support that "raises a right to relief above the speculative level." *See Twombly*, 550 U.S. at 570. "Naked assertions" devoid of "factual enhancement" are wholly insufficient to state a plausible claim for relief. *See Iqbal*, 556 U.S. at 678.

---

[11]The Counterclaim does not allege that Mr. Zefutie employed an aggressive litigation style. *See* Point IV.A., *supra*.

Furthermore, Courts universally agree that an attorney's trial tactics cannot form the basis of a legal malpractice claim.  [A]n attorney may not be held liable for "the choice of trial tactics and the conduct of a case based on professional judgment . . . ."  *Frank v. Bloom*, 634 F.2d 1245, 1257 (10th Cir. 1980) (citing  *Woodruff v. Tomlin*, 616 F.2d 924, 930 (1980); *Applegate v. Dobrovir, Oakes & Gebhardt*, 628 F. Supp. 378, 383 (D.D.C. 1985); *Cecala v. Newman*, 532 F. Supp. 2d. 1118, 1139 (D.C. Ax. 2007) ("Considerations such as … ***the style of presentation*** should not support a legal malpractice claim.") (Emphasis added); *Biomet, supra* at 666 (observing that the judgmental immunity rule is "[a] recognition that if an attorney's actions could under no circumstances be held to be negligent, then a court may rule as a matter of law that there is no liability").  Accordingly, Mr. Colella's allegedly aggressive litigation style in the Underlying Litigation is not a plausible basis upon which this Court can infer that he committed legal malpractice, and the Counterclaim must be dismissed *with prejudice* pursuant to Rule 12(b)(6).

## V.    CONCLUSION

For all of these reasons, the Counterclaim must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6), because it fails to state a plausible claim upon which relief may be granted.

WHEREFORE, Plaintiff/Counter-Defendants Ugo Colella and John J. Zefutie, Jr. respectfully pray that this honorable Court dismiss the Counterclaim filed by Defendant/Counter-Plaintiffs and for any additional relief that the Court deems just.

<u>ORAL HEARING REQUESTED</u>

Date:  May 17, 2021

Respectfully submitted,

_/s/ Brian A. Scotti_ _____

Brian A. Scotti (Bar No. 497125)
Jonathan Barnes (Bar No. 1033396)
Judith G. Lysaught (Bar No. 102022)
GORDON REES SCULLY MANSUKHANI, LLP
1101 King Street, Suite 520
Alexandria, VA 22314
(202) 399-1009
(202) 800-2999 (facsimile)
bscotti@grsm.com
jbarnes@grsm.com
jlysaught@grsm.com

*Counsel for Counter-Defendants*
*Ugo Colella and John J. Zefutie, Jr.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 17, 2021, a true copy of the foregoing was electronically served upon the following counsel of record:

Christopher Hoge (Bar # 203257)
CROWLEY, HOGE & FEIN, P.C.
1211 Connecticut Ave., N.W. #300
Washington, D.C. 20036

*Counsel for Plaintiffs*

*/s/ Brian A. Scotti*_____
Brian A. Scotti, Esq.