# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UGO COLELLA, *et al.*, | ) | |
| | ) | |
| Plaintiffs/Counter-Defendants | ) | |
| | ) | |
| v. | ) | Case No. 1:20-cv-00813-RC |
| | ) | |
| THOMAS T. ANDROUS, *et al.*, | ) | |
| | ) | |
| Defendants/Counter-Plaintiffs | ) | |

## DEFENDANTS'/COUNTER-PLAINTIFFS' OPPOSITION TO PLAINTIFFS'/COUNTER-DEFENDANTS' MOTION TO DISMISS COUNTERCLAIM

Defendants/Counter-Plaintiffs, Thomas T. Androus ("Androus"), 2208 Russell Road, LLC, and 2208 RR AVA, LLC (collectively, "Counter-Plaintiffs"), by their undersigned counsel, respectfully submit this Brief in Opposition to Plaintiffs'/Counter-Defendants' ("Counter-Defendants") Motion to Dismiss the Counterclaim filed herein.

## INTRODUCTION

The Counterclaim sufficiently states a claim upon which relief can be granted. Counter-Defendants have failed to demonstrate that Counter-Plaintiffs can prove no set of facts in support of their claims which would entitle them to relief. Indeed, viewing the Counterclaim in the light most favorable to Counter-Plaintiffs, as this Court must do, a jury could certainly find that Counter-Defendants breached their duty of care to Counter-Plaintiffs in a number of highly significant ways, including, *inter alia*, failing to accurately advise Androus regarding Counter-Plaintiffs' claim for punitive damages (Counterclaim, ¶37(a)); incorrectly advising Androus that Counter-Plaintiffs had a very strong case against Thomas Brothers Enterprises, LLC and Brian Thomas (collectively, "Thomas") based on Thomas' lack of a construction license (*Id.,* ¶37(b)); incorrectly advising Androus concerning the consequences of transferring title to the property

that was the subject of the litigation against Thomas (*Id.*, ¶37(c)); failing to competently manage and supervise the selection and preparation of expert witnesses (*Id.*, ¶37(d)); failing to engage in settlement negotiations with Thomas when Androus requested them to do so (*Id.*, ¶37(e)); and utilizing an overly aggressive litigation style at trial (*Id.*, ¶37(f))[1].  The Counterclaim specifically alleges breaches of the standard of care in each of these areas, and claims that Counter-Plaintiffs suffered specific damages as a direct and proximate result, citing specific facts to support these allegations.  *Id.*, ¶38.  That is more than sufficient to state a claim under the Fed. R. Civ. P. 12(b)(6) standard.

In their introduction, Counter-Defendants make much of the fact that the trial judge in the underlying case complimented them, along with counsel for Thomas, for doing a good job.  Of course, the trial judge could not have known all of the facts surrounding Counter-Defendants' pre-trial advice to Androus, or Androus' desire to find an amicable resolution prior to the trial, or Counter-Defendants' negligent preparation for trial.   The malpractice allegations were not before the judge, and he could not have been expected to address whether Counter-Defendants breached the standard of care as now claimed by Counter-Plaintiffs.

## STANDARD OF REVIEW

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plaintiffs must allege sufficient facts to "nudge[ ] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

---

[1]The counterclaim erroneously labeled ¶37(f) as a second ¶37(e).

In evaluating a motion to dismiss, "the Court 'must treat the complaint's factual allegations as true…and must grant plaintiff the benefit of any inferences that can be derived from the facts alleged.'" *Pitts v. Howard Univ.*, 13 F.Supp.3d 14, 17 (D.D.C 2014) (*quoting Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000)). "The notice pleading rules are 'not meant to impose a great burden on a plaintiff,' and he must thus be given every favorable inference that may be drawn from the facts alleged." *Pitts,* 13 F.Supp.3d, at 17-18 (*quoting Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005). Dismissal of a complaint is proper only if the plaintiff has not "put forth 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.,* at 18 (*quoting Dura Pharms.,* 544 U.S., at 347); *see also Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

When considering the factual allegations, the Court views the complaint as a whole, assumes the truth of its allegations, and affords the plaintiff the benefit of reasonable inferences from the allegations. *Matrixx Initiatives, Inc. v. Siracusano,* 563 U.S. 27, 46-47 (2011); *see also Poindexter v. Wachovia Mortgage Corp.*, F. Supp.2d, 2012 WL 1071248, *1 (D.D.C. 2012) (Wilkins, J.) ("the court liberally construes the complaint in favor of the nonmoving party and grants all reasonable inferences to the nonmovant that can be derived from the facts alleged").

In the District of Columbia, dismissal for failure to state a claim upon which relief can be granted is impermissible unless it appears beyond doubt that the plaintiff can prove no set of facts in support of her claim which would entitle her to relief. *Owens v. Tiber Island Condominium Ass'n,* 373 A.2d 890, 893 (D.C. 1977). The allegations in the complaint must be taken as true and construed in the light most favorable to the plaintiff, and if these allegations are sufficient, the case must not be dismissed even if the court doubts that the plaintiff will

ultimately prevail.  *Atkins v. Industrial Telecomms. Ass'n,* 660 A.2d 885, 887 (D.C. 1995).

## ARGUMENT

### 1.  The Counterclaim Adequately Alleges a Prima Facie Case of Legal Malpractice

Contrary to Counter-Defendants' contention, the Counterclaim adequately alleges facts from which this Court may plausibly infer that Messrs. Colella and Zefutie breached their duty of care to Counter-Plaintiffs in a number of ways, and that these breaches directly and proximately caused damages to Counter-Plaintiffs.   Moreover, the majority of Counter-Defendants' arguments are highly fact-specific, and thus are more appropriately raised in a motion for summary judgment rather than a motion to dismiss.

The Counterclaim alleges that Counter-Defendants entered into written agreements to represent Counter-Plaintiffs in their dispute with Thomas concerning property located at 2208 Russell Road, Alexandria, Virginia (the "Property"). Counterclaim, ¶¶ 6, 7, 18, 19, 20.  As Counter-Plaintiffs' retained counsel in this dispute and the resultant lawsuit (the "Underlying Litigation"), Counter-Defendants had a duty to use the degree of care reasonably expected of other legal professionals with similar skills acting under the same or similar circumstances. *Biomet, Inc. v. Finnegan Henderson*, *LLP*, 967 A.2d 662, 665 (D.C. 2009) (citing *Morrison v. MacNamara*, 407 A.2d 555, 561 (D.C. 1979)).

As alleged in the Counterclaim, Counter-Defendants breached their duty of care in six specific and significant ways.   Counter-Defendants incorrectly advised Counter-Plaintiffs on several highly important issues.  Specifically, they advised Androus that Counter-Plaintiffs  had "a very strong case against Thomas based on its lack of a construction license" under the Virginia Consumer Protection Act ("VCPA"), and that they "had a viable claim for punitive damages, which could result in up to nine times the actual damages (i.e. $10,800,000), as well as

a claim for attorneys' fees, estimated at $400,000." Counterclaim, ¶¶ 14, 15, 37(a), (b) & (f). They then recommended aggressively pursuing these claims, to Counter-Plaintiffs' ultimate detriment. The fact is that, at the time Counter-Defendants were retained, the trend of legislative amendments to the VCPA and Virginia case law regarding unlicensed contractors revealed a legislative and judicial intent to mitigate the harsh results dictated by the original statute. These developments were clearly laid out by the Virginia Supreme Court in *J.W. Woolard Mechanical & Plumbing, Inc. v. Jones Dev. Corp.*, 235 Va. 333, 337-339 (Va. 1988), a case cited by Counter-Defendants in the Underlying Litigation.

In *J.W. Woolard*, the plaintiff, a contracting business, sought to recover payment for plumbing work performed for defendant property owner. Woolard's business was formed by a contractor and civil engineer, both of whom were personally licensed. When Woolard filed a memorandum of mechanic's lien and a motion for judgment, the defendant challenged the validity of the lien on the ground that the contracting business was not properly licensed under Virginia law. On appeal, the Virginia Supreme Court held that defendant could not raise the lack of a license as a defense because the principals of the contracting business did not have "actual notice" of the licensing requirement and were themselves properly licensed.

The Court reached its ruling by examining the Virginia Code provision's enactment, amendments and interpretation over the years. *Id.*, at 337-39. Beginning with the first Virginia Supreme Court case interpreting the statute, the Court explained that it had read the statute strictly, resulting in a finding that the contract made by an unlicensed contractor was illegal and void. *Id.* at 337 (citing *Bowen Elec. Co. v. Foley*, 194 Va. 92 (1952)). As a response, in 1956 the Virginia General Assembly amended the Code to add an "objective notice" requirement, protecting contractors who were unlicensed but who, before or at the time of contract, did not

have a warning that the owner "intended to assert the contractor's lack of licensure as a bar to recovery." *Woolard.,* 235 Va. at 338. The Code as amended by the 1956 Session of the General Assembly provided:

> [N]o person shall be entitled to assert this section as a defense to any action at law or suit in equity unless such person shall first affirmatively prove that notice of this section, prior to or upon the execution of the contract, has been given to the party who seeks to recover from such person.

Acts 1956, c. 397. Subsequent cases interpreted the amendment as "clearly intended to ameliorate the harshness" of the original interpretation of the statute. *Woolard.,* 235 Va. at 338 (citations omitted). Following this shift, "[t]he legislative history and the case law together evidence an intention to strike a balance: to penalize those whose violations of the statutory scheme are knowing, but to excuse those who perform in good faith and whose violations are inadvertent." *Id.,* at 339. For example, in a 1968 case, a contractor's lack of license did not bar him from recovering on his contract. *Id.,* at 338 (discussing *Moore v. Breeden*, 209 Va. 111 (1968)). In *Moore*, the contractor was aware of the Virginia licensing laws and had made a failed attempt at applying to the licensing board before entering into the contract in question. The owner raised the contractor's lack of license as a defense to enforcement of the contract, but lost because he had not given the contractor notice of the licensing requirement or of his intention to assert the lack of license as a bar to the contractor's recovery. *See generally, Moore v. Breeden*, 209 Va. 111 (1968). In another case, following a second amendment to the statute, an unlicensed contractor was unable to recover because it was aware of the licensing requirement and was specifically on notice that the owner would raise the issue. *Woolard.,* 235 Va. at 338-39 (discussing *First Charter v. Middle Atlantic*, 218 Va. 304 (1977)). Ultimately, the *Woolard* court found that the business principals "were properly licensed and were unaware at the time of

the contract that incorporation necessitated that a personal license be 'changed over' to the corporate name." *Woolard.,* 235 Va. at 339-340.

This analysis in *J.W. Woolard* provides an instructive framework for any attorney litigating a case against an unlicensed contractor in Virginia. The case indicates that the statute and its interpretation have developed over time to be less harsh on unlicensed contractors, but are still used to "protect the public by penalizing" flagrant offenders. *Id.,* at 339. In sum, the lack of a license is not a "slam dunk" defense for an owner who raises the issue, and it has not been since the amendment to the statute in 1956. However, rather than explain the murky nature of the law and that the lack of a license was not necessarily fatal to Thomas' claims, as the statutory amendments and case law suggest, Counter-Defendants advised Androus that Counter-Plaintiffs' claim under the VCPA was worth over $3,000,000, including treble damages. Counterclaim, ¶¶ 11, 14.

Counter-Defendants also misled Androus concerning the availability and likelihood of punitive damages, advising that such damages "could result in up to nine times the actual damages (i.e. $10,800,000.00)." *Id.,* ¶14. They did not inform him of the $350,000 statutory cap on punitives. *Id.; see* Va. Code § 8.01-38.1. Rather than admit to this error, in their motion Counter-Defendants reiterate the legitimacy of their stance on this issue by asserting that the jury instruction in the Underlying Litigation did not reference a cap on damages. Motion at 9-14. However, per the statute, if the jury were to award punitive damages in excess of $350,000, the trial judge would be obliged to remit the award to that amount. This was never explained to Androus. Rather, Counter-Defendants painted a highly unrealistic and inaccurate picture of what could be accomplished at trial, and Counter-Plaintiffs relied on that advice to their detriment.

The Counterclaim also alleges that Counter-Defendants incorrectly advised Counter-Plaintiffs "that there was nothing wrong with conveying the Property to 2208 RR AVA", that they assisted with that transaction, and that they advised Counter-Plaintiffs "not to convey the Property back to 2208 Russell Road after Counter-Plaintiffs were sued for fraudulent conveyance by Thomas". Counterclaim, ¶¶ 10, 13, 37(c). This clearly was legally incorrect advice, as evidenced by Thomas' dramatic success in the Underlying Litigation challenging the conveyance of the Property. *Id.*, ¶¶ 29, 30.

Counter-Defendants now argue that their representation was limited and did not extend to any transfers or estate planning involving the Property. Motion at 18-19. However, the counterclaim specifically alleges that Counter-Defendant Colella and his then law firm, Duane Morris, assisted Androus in deeding the Property to 2208 RR AVA (Counterclaim, ¶10), and that, after Thomas filed suit for fraudulent conveyance in July of 2018, Colella advised Androus not to convey it back to the original purchaser, 2208 Russell Road, LLC (*Id.*, ¶13). The fact that Colella may dispute these allegations is not sufficient to sustain a motion to dismiss. Nor does the fact that the engagement agreements do not specify that Counter-Defendants would give advice and assistance regarding these transactions control whether they could be held liable for negligent advice about them. "In a suit against an attorney for negligence, the plaintiff must prove three things in order to recover: (1) the attorney's employment; (2) his neglect of a reasonable duty; and (3) that such negligence resulted in and was the proximate cause of loss to the client." *Niosi v. Aiello*, 69 A.2d 57, 60 (D.C. 1949); *Smith v. Swick & Shapiro*, 75 A.3d 898, 902 (D.C. 2013). Those elements have been adequately pled in the counterclaim. In the end, Counter-Defendants failed in their duty to accurately inform their clients about the applicable law. *Wood v. McGrath, North, Mullin & Kratz, P.C.,* 256 Neb. 109, 589 N.W.2d 103, 106

(1999) (citing 2 Ronald E. Mallen & Jeffrey M. Smith, *Legal Malpractice* §17.15 at 531-32 (4th ed. 1996).

The counterclaim also alleges that Counter-Defendants breached their duty of care by failing to engage in "meaningful settlement discussions" with Thomas or his counsel prior to trial, despite requests from Androus to do so. Counterclaim, ¶¶ 25, 37(f). This decision not to explore settlement opportunities, compounded by unrealistic advice concerning the possible outcomes of litigation, was one which "*no reasonable attorney*, having undertaken a *reasonable* investigation in the facts and law as would be appropriate under the circumstances, and with knowledge of the same facts, would have made." *Jones v. Lattimer*, 29 F. Supp. 3d 5, 10-11 (D.D.C. March 6, 2014) (citation omitted) (emphasis in original). The Underlying Litigation commenced in July of 2018 and did not go to trial until October 2019. *Id.* ¶¶12, 25. Contrary to Counter-Defendants' argument, of course there was ample opportunity for mediation, had Counter-Defendants only requested it.

Counter-Plaintiffs also allege that Counter-Defendants breached their duty of care by failing to manage and supervise the selection and preparation of expert witnesses in the Underlying Litigation. Counterclaim, ¶¶ 21-24, 37(d). The first failure in this regard was in selecting experts who had personal relationships with Androus, Jeffery J. Resetco and Randy Harding. *Id.*, ¶21. This made them unnecessarily susceptible to accusations of lack of objectivity and bias. Secondly, Counter-Defendants did not supervise the preparation of Mr. Harding's estimate of the cost of repair and, prior to his deposition, failed to alert Harding to the fact that the estimate had been altered by Androus out of a desire to be more fair to Thomas. *Id.*, ¶¶ 22, 24. Third, Counter-Defendants allowed Resetco to simply adopt a report on construction defects written by Androus, which cast great doubt on his credibility. *Id.*, ¶23. While a claim for legal malpractice

cannot be predicated upon afterthought reflections "on how the case should have been tried" (Mallen, Legal Malpractice, § 33:77 (Thomson Reuters, 2020 ed.)), these alleged failures go to the heart of what litigation lawyers are supposed to do.

Finally, the counterclaim alleges that all these breaches of duty by Counter-Defendants directly and proximately resulted in direct harm to Counter-Plaintiffs:

> As a direct and proximate result of Counter-Defendants' breach of their duty of care, as aforesaid, Counter-Plaintiffs' have suffered substantial and permanent damages, including but not limited to:
>
> > a.  A judgment against them in favor of Thomas in the current amount of approximately $2,600,000, including post-judgment interest;
> >
> > b.  Overpayment of attorneys' fees to Counter-Defendants in the amount of approximately $300,000 for services that fell below the standard of care;
> >
> > c.  Attorneys' fees to appellate counsel in the amount of approximately $145,000;
> >
> > d.  The cost of bond pending appeal in the amount of approximately $100,000; and
> >
> > e.  Acute psychological and emotional distress.

Counterclaim, ¶38.  Counter-Plaintiffs have alleged, and will be required to prove, that there is a large delta between what would have resulted had Counter-Defendants adequately managed the case and given advice based upon a fair and informed analysis of Counter-Plaintiffs' claims, and the disastrous result that actually happened.  Based upon Counter-Defendants' unreasonable puffery about the prospects of a big win at trial, as well as their failure to advise about the risks involved in the VCPA claim, Counter-Plaintiffs went into a six day trial expecting "to win a substantial verdict."  Counterclaim, ¶¶ 14, 35.  Moreover, Counter-Defendants' bad advice regarding the Property transfer exposed Counter-Plaintiffs to a claim of fraudulent conveyance

that dominated the Underlying Lawsuit and played a significant role in the large verdict against them. *Id.* ¶¶ 10, 12, 13.

Counter-Defendants argue that the allegations regarding lost settlement opportunity are speculative, citing to cases outside this jurisdiction in support. Motion, at 23 – 25.[2] The only case cited from a relevant jurisdiction is *Zee Co., Inc. v. Williams, Mullen, Clark & Dobbins, P.C.*, 871 F. Supp. 2d 498, 512 (E.D. Va. 2012) (Motion at 23). However, *Zee* is a non-binding opinion of a trial court, was based on North Carolina law governing offers and acceptances, and has facts that are highly distinguishable from the case at hand. Most significantly, *Zee* was a decision on a motion for summary judgment, and not on a Rule 12(b)(6) motion to dismiss. It contains a detailed discussion of the specific facts adduced through discovery, which of course cannot be done at the preliminary motion stage. None of the other cases cited by Counter-Defendants on this subject were decided at the motion to dismiss stage, and they are all factually inapposite.

According to the leading treatise on legal malpractice, "[i]f the issue concerns an agreement that did not occur, which the plaintiff contends should have occurred, the question is what evidence must be produced to establish that the other party would have agreed. *The answer may be facilitated by testimony by the party to the underlying transaction."* Mallen, §37.92 (emphasis added). As an example, Mallen cites the case of *Shimer v. Foley, Hoag & Eliot,* LLP, 59 Mass. App. Ct. 302, 795 N.E.2d 599 (2003), in which the defendant law firm advised its client to insist on certain contractual rights rather than accept an offer to compromise. The plaintiff claimed that "had the law firm advised of known legal authority, which was contrary to

---

[2]The question of whether to apply District of Columbia or Virginia law to the issues raised by this motion has not been briefed and is not clear. Generally, courts apply the law of the jurisdiction where the events occurred to substantive issues, and that of the forum to procedural issues. *Reeves v. Eli Lilly & Co.*, 368 F. Supp. 2d 11, 25-26 (D.D.C. 2005).

its communicated analysis, he would have accepted the offer and would have avoided the legal expense." While the *Shimer* court held that the plaintiff must show "the existence of the offer, the terms and that, but for the law firm's negligence, he would have accepted and had a binding contract", it ruled that "he should have been allowed to do so." *Id.*

Regarding the sufficiency of a complaint for legal malpractice, "[t]he pleading need not show . . . precisely how the general damages arose, since that is the subject of evidence rather than pleading." Mallen, §37.60 (citations omitted). Of course, in order to prevail, Counter-Plaintiffs will have to present both fact witness and expert testimony concerning what the result would likely have been if the case had been properly handled. The expert testimony obviously will be impacted by the discovery to be done in this case. However, it is not required that the Counterclaim include a detailed analysis and calculation of this damage, but only enough information "that the fact of damage is not left to speculation." *Id.*

In *Seed Co. v. Westerman*, 840 F. Supp. 2d 116, 126 (D.D.C. 2012), a legal malpractice case involving an underlying patent matter, the plaintiffs claimed that "they acted in reliance on the defendants' erroneous legal advice when they declined settlement offers." In considering the defendant law firms' motion for summary judgment, the trial court held that "[n]ot withstanding the lack of supporting declarations, the Court believes that a ruling on the Westerman defendants' summary judgment motion would be premature at this juncture . . . . Thus, the Court agrees that the plaintiffs should be afforded an opportunity to present evidence raising a genuine dispute of fact regarding causation." *Id.*, at 126 (citation omitted)*; see also Estate of Darby v. Medhin*, 1991 U.S. Dist. LEXIS 752, at *4 (D.D.C. Jan 22, 1991).

**2. Plaintiffs/Counter-Defendants are Not Shielded by the Lawyer Judgment Rule**

Counter-Defendants rely on the case of *Biomet, Inc. v. Finnegan Henderson*, *LLP*, 967 A.2d 662, 665 (D.C. 2009) for the proposition that "there can be no liability for acts and omissions by an attorney in the conduct of litigation which are based on an honest exercise of professional judgment." Motion at 13-14. However, *Biomet* states that an attorney "is still bound to exercise a reasonable degree of skill and care in all of his professional undertakings." 967 A.2d at 666 (citation omitted). That is precisely Counter-Plaintiffs' contention in this case, i.e. that by failing to correctly analyze the Underlying Litigation and communicate accurate information to their client, Counter-Defendants did not "exercise a reasonable degree of skill and care in all of [their] professional undertakings," leading directly to Counter-Plaintiffs' significant loss in trial. *Id.*

The attorney judgment defense is usually raised on a motion for summary judgment or left as a question of fact for a jury. *Jones*, 29 F. Supp. at 9-10; *Smith v. McLaughlin*, 289 Va. 241 (Va. 2015). Counter-Defendants claim that their advice regarding the Underlying Case is protected by the immunity rule because the "Virginia Consumer Protection Act . . . afforded Androus both a good defense to Thomas's breach of contract claims in the Underlying Litigation as well as a counterclaim based upon Thomas's admitted lack of construction license." Motion at 2-3.

While the VCPA may have afforded a good-faith basis for such a defense and/or counterclaim, Counter-Plaintiffs allege that Counter-Defendants should have informed them about the risks involved in relying primarily on the alleged statutory violation, as discussed *supra*. While an attorney may not be liable "for an error in judgment concerning a proposition of law that is debatable, uncertain, unsettled or tactical" (Mallen, § 33:15 (citation omitted)), he cannot "recast all [his] failures as strategic choices." *Perkins v. American Transit Ins. Co.*, 2013 U.S. Dist. LEXIS 6703, *54 (S.D. N.Y. 2013). Counter-Defendants must have been aware of the risks because, even now, they cannot cite persuasive case law on the theory argued in the

Underlying Litigation. For example, two old cases referenced in Counter-Defendants' Motion were superseded by the amendments to the statute in 1956. *See F.S. Bowen Elec. Co. v. Foley*, 194 Va. 92, 100 (Va. 1952); *see also Cohen v. Mayflower Corp.*, 196 Va. 1153, 1161 (Va. 1955). Counter-Plaintiffs were led to believe that Counter-Defendants' theory of the case was bulletproof. Counter-Defendants failed to communicate the correct state of the law as it existed at the time of the Underlying Litigation, and so failed to manage their clients' expectations. Such a failure cannot be characterized as an exercise of professional judgment protected by the *Biomet* case.

### 3. Counter-Defendants' Defenses Regarding the Property Transfer Cannot Be Resolved at the Motion to Dismiss Stage

Counter-Defendants raise three defenses in response to the allegations that they breached their duty of care in advising and assisting Counter-Plaintiffs regarding the transfer of the Property to 2208 RR AVA. None of these defenses can be resolved in Counter-Defendants' favor at this stage of the proceedings.

#### a. In Pari Delicto

First, Counter-Defendants raise the affirmative defense of *in pari delicto*, arguing that Androus cannot recover damages from Counter-Defendants "because he bears equal or greater fault in the alleged fraudulent transfers at issue." Motion at 15-18. As described in the Maryland case cited by Counter-Defendants, the doctrine of *in pari delicto* serves "to protect the institutional interests of the courts and avoid situations where the court would otherwise have to endorse or reward inequitable conduct." *Yarn v. Hamburger Law Firm, LLC*, No. 12-3096, at *30 (D. Md. Sept. 24, 2013) (citation omitted). This defense is highly fact specific and not appropriately raised on a motion to dismiss. *Id.* at 30-31. In addition, an attorney cannot make

the sweeping assertion that "regardless of malpractice, a client who engages in wrongdoing in connection with any aspect of litigation thereby as a matter of law forfeits all rights of recovery against the attorney." *Breezevale Ltd. v. Dickinson*, 783 A.2d 573, 574 (D.C. 2001). The misconduct must go to the core of the malpractice issues. *Id.* The doctrine does not protect an attorney who encourages a client to make a decision without adequate information.

Counter-Plaintiffs relied on Counter-Defendants' bad advice both for the original property transfer (Counterclaim, ¶¶ 10, 37(c)), and for the decision not to deed the Property back to its previous owner after the original lawsuit was filed. *Id.*, ¶¶ 13, 37(c). In their defense, Counter-Defendants claim that the court in the Underlying Litigation determined that they were not complicit in the fraudulent transfer of the Property. Motion at 17. However, the Court's Order cited in support of this argument does not address counsel's lack of involvement in the transfer of the Property, but states only that communications between Counter-Plaintiffs and Counter-Defendants were "not relevant to any material issue" in the matter. Motion Ex. G. The issue presented at the time by Thomas was distinctly different from the issue raised in the counterclaim herein.

Like contributory negligence, the issues raised by a defense of *in pari delicto* are highly fact specific. At the very least, discovery must take place in order to elucidate the full facts and circumstances surrounding the Property transfer and the roles that each of the parties played in it.

### b. Statute of Limitations

Second, Counter-Defendants argue that the claims regarding the Property transfer are barred by the statute of limitations. Motion at 18-19. This is a procedural issue governed by District of Columbia law. *Reeves v. Eli Lilly & Co.*, 368 F. Supp. 2d 11, 25-26 (D.D.C. 2005). In this jurisdiction, the three year statute of limitations starts to run when "the right to maintain the

action accrues." *Knight v. Furlow*, 553 A.2d 1232, 1233-34 (D.C. 1989); D.C. Code § 12-301(8) (2001). "[A] cause of action accrues when the plaintiff has knowledge of (or by the exercise of reasonable diligence should have knowledge of) three things: the injury, its cause in fact, and some evidence of wrongdoing." *Knight*, 553 A.2d at 1234. "At that point, the plaintiff is on inquiry notice of the cause of action, and the statute of limitations begins to run." *Seed Co. v. Westerman*, 832 F.3d at 331 (citing *Wagner v. Sellinger*, 847 A.2d 1151, 1154 (D.C. 2004)). The issue of when a plaintiff knew, or should have known, that he had a possible cause of action is generally one of fact, not susceptible of resolution by dispositive motion. *Reeves*, 368 F. Supp. at 21 (D.D.C. 2005) (citing *Bussineau v. President and Directors of Georgetown Coll.*, 518 A.2d 423, 426, 428 (D.C. 1986)).

Counter-Defendants contend that the statute of limitations on the property transfer claim began to run on October 24, 2017, the date on which Androus first conveyed the property. Motion at 18. However, this defense assumes that Androus knew, or should have known, that his attorneys' advice was incorrect, and that he would incur damages as a result, on the exact date of the initial transfer. It also ignores Counter-Plaintiffs' allegations that Androus acted "with the assistance and knowledge" of his lawyers when making the original property transfer, as well as the subsequent advice to not deed the Property back. Complaint, ¶¶ 10, 13. The latter advice occurred after the complaint in the Underlying Litigation was filed on July 19, 2018, and thus was less than three years prior to the filing of the counterclaim herein (February 24, 2021). Moreover, the counterclaim alleges that Counter-Defendants continued to represent Counter-Plaintiffs in the Underlying Litigation, which focused largely on the fraudulent transfer of the Property, until at least October of 2019, the date of the trial. As alleged, Androus did not believe that conveying the Property was illegal, and he acted upon the advice of his attorneys. Even

after the lawsuit for fraudulent conveyance was filed, Counter-Defendants continued to maintain that Androus had done nothing wrong, that he need not deed the Property back, and that he should continue to pursue the case against Thomas. From these allegations, the Court may infer that Counter-Plaintiffs did not have knowledge of the injury caused by the bad advice given by his attorney at least until the fraudulent conveyance claim was filed, if not later.

District of Columbia law "tolls the statute of limitations on legal malpractice claims until 'the attorney's representation concerning the particular matter in issue is terminated'", even if the client was on actual or inquiry notice of the attorney's malpractice before then. *R.D.H. Commc'ns, Ltd. v. Winston*, 700 A.2d 766, 768 (D.C. 1997). That did not occur until at least October 2019.

### c. Judicial Estoppel

Third, Counter-Defendants argue that the Counterclaim is barred by judicial estoppel. Motion at 19-20. Specifically, Counter-Defendants argue that Androus never mentioned in the Underlying Litigation that he had transferred the Property upon the advice of counsel and, secondarily, that their involvement in the fraudulent transfer was "specifically reviewed by the Court in the Underlying Litigation." *Id.,* at 20, citing Motion Ex. F.

The doctrine of judicial estoppel **"**generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Encyclopedia Britannica, Inc. v. Dickstein Shapiro*, LLP, 905 F. Supp. 2d 150, 154 (D.D.C. 2012) (citation omitted). However, it is a rule left to the court's discretion and should be applied with "a sense of fairness, with the facts of the particular dispute in mind," not "when a party's prior position was based on inadvertence or mistake." *Id.*; *Johnson Service Co. v. Transamerica Ins. Co.*, 485 F.2d 164, 175 (5th Cir. 1973); *accord Konstantinidis v. Chen*, 200 U.S. App. D.C.

69, 626 F.2d 933, 939 (D.C. Cir. 1980). In deciding whether to apply the doctrine, courts must ask whether "a party's later position [is] clearly inconsistent with its earlier position." *Encyclopedia*, 905 F. Supp.2d at 154 (citation omitted).

Here, Androus' statements in the Underlying Litigation are not inconsistent with any of the allegations made in the counterclaim. Androus testified that he "transferred the Property, because of all the construction defects coupled with the fact that Thomas was not a licensed contractor in Virginia." Motion at 19, citing Motion Ex. E at 418/2 – 422/8. However, he never stated, and indeed was never asked, whether he did so upon the advice of counsel. Motion Ex. E at 418-422. Compare *Venable LLP v. Overseas Lease Grp., Inc.*, 2015 U.S. Dist. LEXIS 98650 *9-10 (D.D.C. July 27, 2015), in which a client was estopped from suing its attorney for purported negligence in recommending a settlement when it agreed to the recommended settlement after suing the law firm and was "fully aware" of the possible defects. In *Venable*, the client's voluntary decisions were "what set up the scenario for a malpractice claim" that might have otherwise been avoided. *Id.* at *9-10; *see also Vogel v. Touhey*, 151 Md. App. 682, 828 A.2d 268 (2003), in which the client was estopped from arguing that her attorney had committed malpractice for an allegedly inadequate investigation into her ex-husband's finances, where the client had agreed to a settlement with the ex-husband, on the record in court, after firing the attorney and despite being offered time for additional discovery. Here, by contrast, Counter-Defendants argue that Androus is estopped from asserting his claims as a result of things he did not say, rather than things he said to the court. It is a necessary element of judicial estoppel that the court relied on earlier, inconsistent assertions of the plaintiff and granted relief based thereon. *Id.*, 828 A.2d at 708 (citing *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001) ("Courts regularly inquire whether the party has succeeded in persuading a court to accept that party's

earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled'".) (internal citations omitted)). Here, Counter-Defendants have not pointed to any statement by Androus which was relied upon by the Court. As discussed in the preceding section, the Court's ruling on Thomas' Motion to Compel had nothing to do with relying upon any assertion by Androus. Motion Ex. F and G.

### 4. The Counterclaim Sufficiently Alleges Professional Negligence on the Part of Counter-Defendant Zefutie.

Lastly, Counter-Defendants argue that the Counterclaim contains no factual allegations concerning Mr. Zefutie's involvement in and culpability for the aforementioned matters. Motion at 8-9, 15. Specifically, Counter-Defendants claim that no allegation is made that Mr. Zefutie provided any advice, "negligent or otherwise," about the property transfer, the VCPA claim and punitive damages. *Id.,* at 15.

However, Mr. Zefutie's name is referenced throughout the Counterclaim. Paragraph 20 of the Counterclaim states that Mr. Zefutie "assisted Colella in preparation for and conduct of the trial of the Underlying Litigation." Paragraph 23 alleges that Androus, "[w]ith Colella and Zefutie's knowledge and consent" prepared a report concerning the nature and extent of construction defects. Paragraph 24 states that "Colella and/or Zefutie failed to alert Harding to the fact that "his estimate had been revised downward and, as a result, the expert was presented at his deposition with an estimate that he had not seen before. And paragraph 25 alleges that "Colella and Zefutie insisted that Counter-Plaintiffs had very substantial claims" and "did not engage in meaningful settlement discussions with counsel for Thomas." When Androus asked if mediation was possible, both "Colella and Zefutie responded that there was no time for

mediation." *Id.*   The Counterclaim alleges that, as a "direct and proximate result of Counter-Defendants' breach," Counter-Plaintiffs suffered harm.   Thus, as argued *supra*, Counter-Plaintiffs have alleged with sufficient specificity what they lost as "a direct and proximate result of Counter-Defendants Colella's and Zefutie's actions.  *Id.*, ¶ 38.

Discovery will clarify exactly what role Mr. Zefutie played during the period between Counter-Defendants' retention and the trial date.   The issues of liability, causation and damages as to both Counter-Defendants will be the subject of factual inquiry, expert testimony and jury determination.   The Counterclaim alleges that both of the Counter-Defendants breached the applicable standard of care, and that Counter-Plaintiffs incurred damages as a result of that negligence.   Counterclaim, ¶¶ 37, 38.   That is enough to pass muster under Rule 12(b)(6) criteria.

**CONCLUSION**

For the foregoing reasons, and for such other and further reasons as may appear upon a full hearing, the Motion to Dismiss should be denied.


Respectfully submitted,

THOMAS T. ANDROUS
2208 RUSSELL ROAD, LLC and
2208 RR AVA, LLC
Defendants/Counter-Plaintiffs
By Counsel

CROWLEY, HOGE & FEIN, P.C.

By:  /s/ *Christopher G. Hoge*
         Christopher G. Hoge #203257

Attorneys for Defendants/Counter-Plaintiffs
1211 Connecticut Avenue, N.W.
Suite 300
Washington, D.C.  20036
(202) 483-2900
(202) 383-1365 (FAX)
cgh@chf-law.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing Opposition was served electronically, via ECF, this 15th day of July, 2021, upon Ugo Colella, Esq., Plaintiff *pro se*; John J. Zefutie, Jr., Esq., Plaintiff *pro se*; and on Brian A. Scotti, Esq., Jonathan Barnes, Esq., and Judith G. Lysaught, Esq., counsel for Counter-Defendants.

/s/ *Christopher G. Hoge*
Christopher G. Hoge  #203257
