# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF COLUMBIA

| | |
|---|---|
| UGO COLELLA *et al.* )<br>)<br>Plaintiffs/Counter-Defendants, )<br>)<br>V. )<br>)<br>THOMAS T. ANDROUS *et al.* )<br>)<br>Defendants/Counter-Plaintiffs. )<br>) | Case No. 1:20-cv-00813-RC |

## REPLY MEMORANDUM IN FURTHER SUPPORT OF PLAINTIFFS/COUNTER-DEFENDANTS' MOTION TO DISMISS COUNTERCLAIM

Plaintiffs/Counter-Defendants, Ugo Colella ("Mr. Colella") and John J. Zefutie, Jr. ("Mr. Zefutie") (collectively, "Counsel" or "Counter-Defendants") respectfully submit this Reply in further support of Counter-Defendants' Motion to Dismiss the Counterclaim.

## I.  ARGUMENT

The Opposition of Counter-Plaintiffs (collectively, "Androus") is an unabashed fiction. To advance this fiction, Androus weaponizes the Rule 12(b)(6) standard, and suggests that this Court should accept as true allegations that are patently false, as the documents properly before this Court demonstrate. Pleading in federal court is not a game of make-believe, and Androus cannot simply conjure up allegations of malpractice to avoid his payment obligations to Counsel. Indeed, the relevant portions of the trial court record attached to Counsels' Motion to Dismiss—***documents the Opposition neither challenges nor disputes***—conclusively refute Androus's fantastical claims of professional negligence. Accordingly, the Counterclaim should be dismissed with prejudice.[1]

---

[1] Androus does not seek leave to amend. As such, if this Court dismisses the Counterclaim, the dismissal should be *with prejudice* because amendment was not requested and/or where the amendment would be futile. *Henok v. Chase Home Finance, LLC*, 915 F. Supp. 2d 109, 114 (D.D.C. 2013).

### A. **Androus Concedes Many Of Counsels' Arguments.**

As an initial matter, Androus ignores, and thus concedes, numerous arguments in the Motion to Dismiss, including:

- ➢ The trial court record is properly before this Court on a Rule 12(b)(6) motion to dismiss (Mot., at 6-7);

- ➢ Mr. Zefutie did not advise Androus about punitive damages, Androus's property transfers, or the strength of Androus's VCPA defense/claim (Mot., at 8-9);

- ➢ Jeffrey Resetco was permitted to testify at trial about the construction defects at the property (Mot., at 21);

- ➢ Randy Harding was a fact witness, not an expert witness (Mot., at 22);

- ➢ Androus secretly manipulated one of Harding's estimates, without Counsels' knowledge or consent, which led to the estimate being excluded at trial (Mot. at 22);

- ➢ Androus knew that Counsel would rely on the doctored estimate that he provided to Counsel (Mot. at 22-23); and,

- ➢ Mr. Colella's "style" before the Court and the jury cannot serve as the basis of a malpractice claim (Mot., at 25-26).

"[W]hen a plaintiff fails to respond to an issue raised in a dispositive motion, the Court may treat that argument as conceded." *Singh v. Dist. of Columbia*, 55 F. Supp. 3d 55, 66 (D.D.C. 2014) (Contreras, J.); *see also Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 238 F. Supp. 2d 174, 178 (D.D.C. 2003) ("It is well understood in this Circuit that when a plaintiff files an opposition to a motion to dismiss addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.") Having failed to address the points above, Androus has abandoned these professional negligence allegations.

### B. **Androus's Own Words Doom His Counterclaim.**

Androus contends that Counsel "painted a highly unrealistic and inaccurate picture of what could be accomplished at trial," and Androus allegedly "relied on that advice to [his] detriment."

Opp. at 7. However, Androus' own document—that he authored the day before trial—fundamentally undercuts this argument.

The day before trial, Androus prepared a document regarding the possible outcomes at trial "***based on conversations with [Counsel]***." *See* Countercl., ¶ 14 ("**BTE v. TTA/2208 Possible Outcomes**") (emphasis added). Androus clearly understood that one of the possible outcomes was that he could lose at trial:

> *Scenario 3*
>
> *BT/BTE awarded everything. TTA/2208 [that is, Androus] is awarded nothing. Result – TTA/2208 [that is, Androus] owes BT/BTE $2,000,000 + fees*

(Emphasis added). A true and correct copy of Androus's "Possible Outcomes" document and his e-mail forwarding same to Counsel are attached as **Exhibit J**. Scenario 3 is precisely what happened.

Where "[a] conclusory allegation in the complaint is contradicted by a document attached to the complaint, the document controls and the allegation is not accepted as true." *Edwards v. Ocwen Loan Servicing, LLC*, 24 F. Supp. 3d 21, 26 n. 4 (D.D.C. 2014) (quoting *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 147 (2d Cir. 2011)). Even though Androus's own "Possible Outcomes" document is not attached to the Counterclaim, this Court may consider it on a Rule 12(b)(6) motion to dismiss. *See Lewis v. Pension Benefit Guaranty Corp.*, 40 F. Supp. 3d 147, 150 (D.D.C. 2014) (court may consider "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss"); *see also Baker v. Henderson*, 150 F. Supp. 2d 13, 15 (D.D.C. 2001) (on a Rule 12(b)(6) motion, "the court may consider . . . any documents either attached to or incorporated in the complaint . . . .").

Clearly, Androus memorialized his understanding and appreciation of the possibility that

3

he could lose at trial, contradicting the false claim that he was led to believe his case was a "slam dunk." *See* **Ex. J**. Based on Androus's own words and indisputable understanding, the Counterclaim should be dismissed because Androus cannot, under any circumstances, satisfy the causation element of his legal malpractice claim. *See Mount v. Baron*, 154 F. Supp. 2d 3, 9-10 (D.D.C. 2001) (causation between the alleged breach of duty and the alleged harm is an essential element in a claim for legal malpractice in the District of Columbia).

### C. Androus's Claims against Mr. Zefutie Should Be Dismissed.

Androus's claims involving punitive damages, the property transfers, and the VCPA should be dismissed because, as Androus concedes, Mr. Zefutie provided no advice on those issues. *See* Opp., at 19; *see also* Mot., at 8-9. Indeed, the hollow allegation that Mr. Zefutie assisted Mr. Colella in the preparation for, and conduct of, the trial of the Underlying Litigation is not enough to allege a plausible claim against Mr. Zefutie. *See* Opp., at 19. Rather, such a broad-brush statement would appear to exonerate Mr. Zefutie from any wrongdoing.

Rule 8 requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The Counterclaim fails to satisfy this minimal burden. It is axiomatic that Rule 8 is designed to provide a defendant with fair notice of the claim being asserted against him. *Brown v. Califano*, 75 F.R.D. 497, 498 (D.D.C.1977) (citing 2A Moore, Federal Practice ¶ 8.13; 5 Wright & Miller, Federal Practice and Procedure § 1217)). It also is intended to "sharpen the issues to be litigated . . . ." *Id.*; *cf. DC2NY, Inc. v. Academy Bus, LLC*, No. 18-2127 (RC), 2020 WL 1536219, at *16 (D.D.C. Mar. 21, 2020) (Contreras, J.) ("The allegation that Academy drivers texted while driving 'on multiple occasions' over the course of four years is too vague to put Academy on sufficient notice."). Here, simply alleging that Mr. Zefutie assisted in preparing for and conducting a trial is not sufficient to put him on notice under Rule 8(a).

Nor does the Opposition point to any allegations concerning Mr. Zefutie's involvement in advice on punitive damages, the property transfers, or the VCPA claim. *See* Opp. at 19. Rather, those allegations concern preparation of expert reports (Paragraph 23),[2] failure to alert a fact witness that Androus secretly manipulated his estimate (Paragraph 24),[3] and settlement negotiations (Paragraph 25).[4]

Furthermore, the allegation that Mr. Zefutie assisted Mr. Colella in the preparation for, and conduct of, the trial can ***never*** be malpractice under the facts of this case because none of Androus's claims involves being ill-prepared for trial. The trial judge's observations and statements on the record conclusively disprove this fanciful notion. *See* Mot., at 1 ("***I've never seen a better prepared case***.") (emphasis added). In any event, the generic allegation that Mr. Zefutie "assisted" in the trial is not sufficient to allege a plausible claim as to the specific allegations of ***pre-trial*** activity—advising about punitive damages, the property transfers, and the VCPA. The Counterclaim must be supported by factual allegations that "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007). A complaint that tenders "naked assertion[s]" devoid of "further factual enhancement" does not suffice. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, (2009). Accordingly, Androus's claims against Mr. Zefutie should dismissed.

### D. Mr. Colella's Advice about Punitive Damages Is Not Malpractice as a Matter of Law.

Mr. Colella's alleged advice about the availability of punitive damages or a punitive damages cap (Countercl., at ¶¶ 14, 37.a.) did not damage Androus. Mot., at 9-10. Androus

---

[2] These claims do not support a plausible claim. *See* Mot., at 20-23; Point G, *infra*.

[3] These allegation do not support a plausible claim. *See* Mot., at 22-23; Point G, *infra*.

[4] These allegations cannot be the basis of a malpractice claim. *See* Mot., at 23-25; Point I.H, *infra*.

completely ignores the indisputable fact that he had a viable punitive damages claim upon which the jury was instructed with no reference to a cap. *Id.* It is axiomatic that, when a jury is instructed on a legal theory, there is sufficient evidence from which the jury could render a verdict in favor of the party seeking the instruction. *See George Washington University v. Waas*, 648 A.2d 178, 183 (D.C. 1994) ("Generally a party is entitled to a jury instruction upon the theory of the case if there is sufficient evidence to support it"); *see also Gebremdhin v. Avis Rent-A-Car System, Inc.*, 689 A.2d 1202, 1204 (D.C. 1997) ("Jury instructions must have an evidentiary predicate.") Thus, there was sufficient evidence to support a punitive damages claim.

Accordingly, Androus cannot prove the essential element of causation. Mot., at 9-10. Androus suffered no harm due to the alleged failure by Mr. Colella to advise of a punitive damages cap because the trial court had no occasion to reduce a punitive damages award to Androus. Accordingly, Androus's malpractice claim predicated on advice regarding punitive damages claim should be dismissed.

### E. Mr. Colella's Advice about the VCPA Is Not Malpractice as a Matter of Law.

Androus concedes that there was, in fact, a good faith basis to invoke the VCPA, but argues that Counsel supposedly led him to believe his counterclaim was "bullet proof" and a "slam dunk." Opp. at 7, 13. This is another fabrication. Nowhere does Androus make such hyperbolic allegations. "A party cannot amend his or her complaint by the briefs in opposition to a motion to dismiss." *Pappas v. Dist. of Columbia*, --- F. Supp. 3d --- (D.D.C. 2021), 2021 WL 106468, at *13 (Contreras, J.) (quoting, *inter alia*, *Kingman Park Civic Ass'n v. Gray*, 27 F. Supp. 3d 142, 160 n. 7 (D.D.C. 2014)). On the contrary, Androus alleges that Mr. Colella "advised Androus that Counter-Plaintiffs had ***very substantial claims*** against Thomas, based on the shoddy construction work and on the fact that Thomas was not licensed in Virginia." Countercl., ¶ 14; *see also id.*, ¶ 37.b (alleging that Androus had a "***very strong case***") (all emphases added). Thus, Androus does

not allege that Counsel advised him that his VCPA claim was "bullet proof" or a "slam dunk" as argued in the Opposition.

Androus also concedes that the jury was instructed on the VCPA. Opp., at 4-7. As such, as a matter of law, there was sufficient evidence to support Androus's VCPA claim. *See Gebremdhin*, 689 A.2d at 1204; *Waas*, 648 A.2d at 183. Androus's analysis of the history of the VCPA and his reliance on *J.W. Woolard Mechanical & Plumbing, Inc. v. Jones Development Corp,* 235 Va. 333, (Va. 1988) is misplaced. Opp., at 4-7. The statutory requirement that a contractor have "actual knowledge" of the licensing requirement—a requirement that Androus bizarrely contends renders the law "murky"—was never in dispute because TBE/Thomas indisputably ***had full knowledge of the licensing requirements***. Mot., at 12-13 (contractor under oath admitting knowledge of the licensing requirements that he considered to be a "joke"). Because there was never any dispute that Thomas had actual notice of the statutory requirement, *Woolard* not only affirms the viability of Androus's VCPA claim, but it confirms that this claim of malpractice has no merit whatsoever. *See J.W. Woolard Mechanical & Plumbing, Inc. v. Jones Development Corp,* 235 Va. at 339 ("[t]he legislative purpose is to protect the public by penalizing contractors who are aware that the law applies to the business they are contemplating, but who nevertheless elect to ignore it.").

Finally, the doctrine of judgmental immunity precludes Androus's VCPA claim based upon Mr. Colella's alleged advice about that statute. Mot., at 13-14. Androus's argument that Mr. Colella "failed to communicate the correct state of the law" and allegedly "failed to manage [Androus's] expectations" (Opp., at 14), is belied by the actual ***facts***. The jury was instructed on the VCPA claim, TBE/Thomas were fully aware of the statute's licensing requirement, and Androus knew he could lose at trial. Mot., at 12-13; **Ex. J**. Accordingly, Androus's claim

7

regarding the VCPA should be dismissed.

### F. Androus's Property Transfer Claim Fails as a Matter of Law.

#### 1. *In Pari Delicto*

*In pari delicto* precludes a plaintiff who participated in the same wrongdoing as alleged against the defendant from recovering damages arising from the wrongdoing. *See In re Derivium Capital, LLC*, 716 F.3d 355, 367 (4th Cir. 2013). Androus's claim concerning Mr. Colella's alleged "assistance and knowledge of" his property transfers is barred by this doctrine.

Androus does not dispute, and therefore concedes, that he transferred the property. *See* Opp., at 14-15; Countercl., at ¶ 10. Indeed, Androus testified at trial that he made the transfers due to the construction defects at the property, Thomas's lack of a license, and as part of a broader estate planning scheme. Mot., at 16, 19-20. Androus never testified that he relied upon Mr. Colella's "assistance and knowledge" in making the transfers. *Id.* Nor does Androus allege any such reliance. Countercl., at ¶¶ 10, 13, 37. In fact, Androus alleges ***no facts*** whatsoever demonstrating Mr. Colella's alleged involvement in the property transfer. *See Iqbal,* 556 U.S. at 678 (a complaint that tenders "naked assertion[s]" devoid of "further factual enhancement" does not suffice).

This is consistent with the trial court's determination that Androus's communications with Mr. Colella regarding the property transfer were "not relevant to any material issue in this matter." Mot., at 17. The "material issue" was, of course, the alleged fraudulent transfer and Mr. Colella's alleged participation in that transfer, which would have made the communications discoverable under the crime/fraud exception to the attorney-client privilege. In the opening pages of the underlying motion to compel, TBE/Thomas made the same claim that Androus makes here: "The law firm of Duane Morris LLP and at least two of its attorneys, ***including one of the attorneys***

8

***currently representing Mr. Androus in this case [i.e., Mr. Colella], assisted Androus with the conveyances***." Mot., Ex. F (D.E. 28-7), at 2 (emphasis added). Following an *in camera* review, however, the trial court denied TBE/Thomas's motion, finding that the communications with Mr. Colella were not relevant because Mr. Colella did not participate in the alleged fraud. *See* Mot., Ex. G (D.E. 28-8).

### 2. *Judicial Estoppel*

The logic behind the doctrine of judicial estoppel is that "a party should not be changing its position between proceedings." *See Encyclopedia Britannica, Inc. v. Dickstein Shapiro, LLP*, 905 F. Supp. 2d 150, 155 (D.D.C. 2012). That is precisely what Androus has done here.[5]

As stated, upon consideration of TBE/Thomas' Motion to Compel privileged attorney-client communications based upon Mr. Colella's alleged assistance in Androus's property transfers and after an *in camera* review of the communications themselves, the trial judge ruled that Androus's communications with Mr. Colella about the property transfers were "[n]ot relevant to any material issue."[6] Mot., at 19-20. Having won on that issue in the Underlying Litigation, Androus now takes the complete opposite position that the property transfers supposedly were made with Mr. Colella's "assistance and knowledge." However, Androus cannot now change his position simply because it suits him to do so. *See Brown v. M Street Five, LLC*, 56 A.3d 765, 780 (D.C. 2012) (holding that "[i]f a party has taken a position before a court of law, whether ***in a pleading, in a deposition, or in testimony***, judicial estoppel may be invoked to bar that party, in a

---

[5] The cases cited in the Opposition (Opp., at p. 18) have no bearing on this issue. *See Venable, LLP v. Overseas Lease Group, Inc.* 2015 WL 4555372 at *3, Civil Case No. 14–02010 (D.D.C July 28, 2015) and *Vogel v. Touhy*, 151 Md. App. 682 (Md. Ct. Spec. App. 2003). Indeed, *Venable* does not discuss the doctrine of judicial estoppel at all.

[6] The "material issues" of course are the alleged fraudulent transfer and/or participation in crime/fraud.

9

later proceeding, from contradicting his earlier position") (internal citations omitted) (emphasis added).

Judicial estoppel is an equitable doctrine. *See* 18 Moore's Federal Practice § 134.31 (3d ed. 2012). It would be inequitable for this Court to now allow Androus to change his earlier position. Accordingly, Androus's claims on the property transfer issue must be dismissed.

### 3. *Androus's Fraudulent Conveyance Claim is Barred by the Statute of Limitations.*

Androus contends that the statute of limitations is tolled until the attorney's representation concerning the ***particular matter*** in issue is terminated. Opp., at 17 (emphasis added). Counter-Defendants acknowledge the continuous representation rule. Mot., at 18. However, the continuous representation rule is inapplicable here because Androus alleges ***no facts*** from which this Court can reasonably infer that Mr. Colella actually represented Androus with his property transfers.[7] Rather, Androus generally alleges that the transfers were made "with the assistance and knowledge" of Mr. Colella. Countercl. at ¶ 10. This single conclusory allegation is not supported by any facts in the Counterclaim.

To the extent that the Counterclaim can be construed to allege that Mr. Colella "represented" Androus in connection with the transfers, that tenuous representation by Mr. Colella would have concluded on October 24, 2017, when the transfers were allegedly made. Androus concedes that the scope of his August, 2, 2017 engagement agreement with Duane Morris, Mr. Colella's prior firm, was the "dispute" between TBE/Thomas and Androus. Countercl. at ¶¶ 6-8.

---

[7] Application of the continuous representation rule, of course, requires representation in connection with the particular matter alleged. *See Rocha v. Brown & Gould, LLP*, 101 F. Supp. 3d 52, 68 (D.D.C. 2015) (Contreras, J.) (noting that the continuous representation rule tolls the statute of limitations until "the attorney's representation concerning the particular matter in issue is terminated.")

The "dispute" did not include Androus's real estate transfers and/or personal estate planning. *Id.* Thus, to the extent that the Counterclaim plausibly alleges representation by Mr. Colella in the property transfers, which it does not, such "representation" necessarily concluded on October 24, 2017, more than two years before Androus made this claim. Accordingly, Androus's Counterclaim must be dismissed because it is time-barred.

### G. Androus's Expert and Fact Witness Claims Must be Dismissed.

Androus does not dispute, and thus concedes, that expert witness Jeffrey Resetco ("Resetco") was admitted as an expert at trial and testified at length about the numerous construction defects that he observed at Androus's property. Mot., at 21; Opp., at 9. Thus, Androus fails to adequately allege that Counsel breached a duty owed to Androus, or that any such breach caused the damages alleged. *See Mount v. Baron*, 154 F. Supp. 2d at 8.

Androus also concedes that he secretly manipulated one of Randy Harding's ("Harding") estimates without Counsels' knowledge or consent, which led to the estimate being excluded at trial.[8] *See* Mot. at 22; Countercl., ¶¶ 22, 24; Opp., at 9. Harding was a fact witness, not an expert as Androus alleges. Androus admits that he changed Harding's estimate because, in his opinion, it was too high. He then delivered the revised estimate to Mr. Colella without disclosing that he manipulated the document. *See* Countercl., ¶¶ 22, 24. Androus disputes none of this. Androus also concedes that he warranted the accuracy and completeness of information he provided to Counsel pursuant to the engagement letter with Culhane Meadows. Mot., at 23.

These admissions doom Androus's counterclaim under the doctrine of *in pari delicto*.[9] Androus's undisclosed and unauthorized alteration of the estimate prevented Counsel from

---

[8] *See* Section I.A. *supra*.
[9] *See* Section I.F.1. *supra*.

11

authenticating the document at trial.  *See* Mot., at 22.  Androus overstates the holding in *Breezevale Ltd. v. Dickinson*, 783 A.2d 573 (D.C. 2001).  Opp. at 15.  In *Breezevale*, the Court of Appeals declined to adopt a *per se* rule that a client's forgery of documents bars recovery for all legal malpractice.  *Id.* at 574.  Here, Counsel never argued that Androus's admitted wrongful conduct bars *all claims*.  Indeed, *in pari delicto* may be invoked by attorneys in a legal malpractice suit. *See In re Greater S.W. Cmty. Hosp. Corp. I v. Tuft*, 353 B.R. 324, 369 (Bankr. D.C. 2006) (citing *in re Dublin Sec., Inc. v. Hurd,* 133 F.3d 377, 380 (6th Cir. 1997).  Moreover, the defense is appropriate in a Rule 12(b)(6) motion to dismiss where, as here, there is "no plausible factual scenario under which [Androus] would not be subject to the defense."[10]  *See In re Greater S.W. Cmty. Hosp. Corp. I v. Tuft*, 353 B.R. at 369.

Finally, Androus does not dispute that the "but for" cause of his altered estimate's inadmissibility was his own ill-considered decision to alter a witness' document.  Mot., at p. 22 Opp., at 9.  Thus, Androus fails to plead a plausible claim on this issue.

### H. Androus's Claim Concerning Settlement Is Incurably Speculative.

Androus ignores the obvious problem that his claim concerning lost settlement opportunity is inherently and impermissibly speculative.  Mot., at 30-32.  Androus disingenuously argues that there was "[a]mple opportunity for mediation had [Counsel] only requested it."  Opp., at 9. However, Androus admits that he did not request a mediation until "shortly before trial."  *See* Countercl., at ¶ 25.

---

[10] Contrary to Androus's argument, this issue should be decided on the motion to dismiss because all facts supporting application of the doctrine have been conceded.  *See In re S.E. Greater Comm'y Hosp. Corp. I*, 353 B.R. 324, 369 (Bankr. D.D.C. 2006) (holding that where "there are no set of facts under which [a party] would not be subject to the defense [of *in pari delicto*] because the very harm that they allegedly suffered . . . presupposes imputable wrongdoing by the [client]," dismissal is appropriate) (cited by Plaintiffs at Mot., 16 and ignored by Androus).

Even more fatal to the Counterclaim is Androus's failure to allege even the bare elements of a claim for lost settlement opportunity: (1) that a settlement would have occurred and (2) an ascertainable amount. *See McConwell v. FMG of Kansas City, In*c., 18 Kan. App. 2d 839, 850, 861 P.2d 830 (1993); *see also Thompson v. Halvonik*, 36 Cal. App. 4th 657, 663-64 (1995). In fact, Androus does not even allege that TBE/Thomas were amenable to settlement discussions, much less a settlement outright.[11] Thus, no "opportunity" to have reached a settlement can be plausibly inferred.

Androus asks this Court to disregard the applicable law and simply allow Androus's fact and expert witnesses to conjure up a reasonable settlement "if the case had been properly handled." Opp. at 12. Of course, the plausibility standard requires more. With no factual allegations that a settlement would have occurred, or in an ascertainable amount, this claim fails as a matter of law. *See Twombly*, 550 U.S. at 570 (pleading must be supported by factual allegations that "raise a right to relief above the speculative level"). Even the cases which Androus relies upon involved a ***settlement offer*** from the plaintiff.[12] Opp. at 11-12. That is not the case here. Indeed, under these facts, "[n]o expert could suppose with any degree of reasonable certainty the private blends of hopes and fears that might have come together to produce a settlement before or during trial." *See Thompson v. Halvonik*, 36 Cal App. 4th at 663-64. Accordingly, Androus's claim regarding settlement negotiations is incurably deficient and must be dismissed.

---

[11] Although not before this Court, the facts will show that Androus refused to engage in any settlement negotiations before trial, after trial, and before judgment was entered against him and his companies. Counter-Defendants raise this point to emphasize that Androus's Counterclaim simply has no basis in fact or reality.

[12] Both *Seed Co. v. Westerman*, 840 F. Supp. 2d 116 (D.D.C. 2012) and *Shimer v. Foley, Hoag & Elliot, LLP*, 59 Mass. App. Ct. 302 (2003) involved offers of settlement from the Plaintiff that were rejected by the defendant.

13

## II. CONCLUSION

For all of these reasons, the Counterclaim should be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) because it fails to state a plausible claim for relief.

WHEREFORE, Plaintiffs/Counter-Defendants Ugo Colella and John Zefutie respectfully pray that this honorable Court dismiss the Counterclaim filed by Defendants/Counter-Plaintiffs *with prejudice* and for any additional relief that the Court deems just.

Date: August 16, 2021

Respectfully submitted,

s/ *Brian A. Scotti*
Brian A. Scotti (Bar No. 497125)
Judith G. Lysaught (Bar No. 102022)
Jonathan Barnes (Bar No. 1033396)
GORDON REES SCULLY MANSUKHANI, LLP
1101 King Street, Suite 520
Alexandria, VA 22314
(202) 399-1009
(202) 800-2999 (facsimile)
bscotti@grsm.com
jlysaught@grsm.com
jbarnes@grsm.com

*Counsel for Plaintiffs/Counter-Defendants*

# **CERTIFICATE OF SERVICE**

I hereby certify that on August 16, 2021, a true copy of the foregoing was electronically served upon the following counsel of record:

Christopher Hoge (Bar # 203257)
CROWLEY, HOGE & FEIN, P.C.
1211 Connecticut Ave., N.W. #300
Washington, D.C. 20036

*Counsel for Defendants/Counter-Plaintiffs*

>                                    */s/ Brian A. Scotti*
>                                    Brian A. Scotti, Esq.